UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2004 OCT 22  P 4:02

DISTRICT COURT
DISTRICT OF MASS.

)
CHARLES LANGONE, as FUND MANAGER )
of the NEW ENGLAND TEAMSTERS AND )
TRUCKING INDUSTRY PENSION FUND )
)
)
Plaintiff, )
v. )  C.A. No. 04cv10041 PBS
)
USCO DISTRIBUTION SERVICES, INC., )
a/k/a USCO LOGISTICS SERVICES, INC. )
)
Defendant. )
)

## STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff respectfully submits the following Statement of Undisputed Facts in support of his Motion for Summary Judgment.

1. Charles Langone is the Fund Manager of the New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund"), a position he has held since October 1990. The Pension Fund has its principal place of business at 535 Boylston Street, Boston, Massachusetts 02116. (Affidavit of Charles Langone, ¶ 1).

2. The Fund is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Langone Aff. ¶ 2).

3. The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an Agreement and

Declaration of Trust dated April 11, 1958 ("the Trust Agreement"), which has been amended from time to time. (Langone Aff. ¶ 3, Exhibit 1).

4. The Fund is administered by an eight-member Board of Trustees in accordance with the terms of the Trust Agreement and the Rules and Regulations of the New England Teamsters and Trucking Industry Pension Plan ("Pension Plan" or "Plan"). The Board of Trustees consists of four trustees representing participating local Teamster unions and four trustees representing employers contributing to the Fund. (Langone Aff. ¶ 4, Exhibit 2).

5. Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.08 of the 1997 Rules and Regulations of the Pension Plan, between contributing employers and local Teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements. (Langone Aff. ¶ 5, Exhibit 2).

6. Contributing employers to the Fund are defined by Article I, Section 1.09 of the 1997 Rules and Regulations of the Pension Plan. (Langone Aff. ¶ 6, Exhibit 2).

7. Participating Local Unions are defined as those unions that have been accepted for participation by the Fund Trustees and have accepted the Trust Agreement in writing pursuant to Article I, Section 1.22 of the 1997 Rules and Regulations of the Pension Plan. (Langone Aff. ¶ 7, Exhibit 2).

8. As Fund Manager, Mr. Langone is responsible for the day-to-day administration of the Fund and the maintenance and oversight of all Fund records. Specifically, Mr. Langone ensures that contributions from

contributing employers to the Fund are properly processed, that pension credit of Fund participants is accurately calculated and that pension benefits are paid in compliance with the Fund's Trust Agreement and Pension Plan, and in accordance with the directions, policies and procedures of the Fund's Board of Trustees. In addition, Mr. Langone processes all appeals of participants and presents these appeals to the Board of Trustees. (Langone Aff. ¶ 8).

9. Article IV of the Trust Agreement provides that the Trustees of the Fund shall have the power to "construe, with discretionary authority, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any construction adopted by the Trustees in good faith shall be binding upon the unions, the Employers and the Employees and their families, dependents, beneficiaries and/or legal representatives." (Langone Aff. ¶ 10, Exhibit 1).

10. Article IV of the Trust Agreement provides that the Trustees have the authority to "reconcile, determine, interpret and construe, with discretionary authority, any question or dispute arising in connection with definitions of terms, right, status or classification of employees or any other dispute or claim arising under the Plan . . ." (Langone Aff. ¶ 11, Exhibit 1).

11. The Trust Agreement contains a standard participation agreement titled "Mandatory Contract Language for Pension Fund," which USCO entered into on September 1, 1982, whereby USCO agreed to include the following pension language in any collective bargaining agreement:

> (a) This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.
> (b) Commencing with the [first day of September 1981], and for the duration of the current collective bargaining agreement, between [Local

> Union 829] and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement . . . (Langone Aff. ¶ 12, Exhibits 1, 3).

12. International Brotherhood of Teamsters, Chauffeurs and Warehouse Employees and Helpers Union, Local 829 (hereinafter "Local 829"), and USCO Distribution Services, Inc., a/k/a USCO Logistics Services, Inc. (hereinafter "USCO"), were parties to a collective bargaining with effective dates of September 1, 1996 through August 31, 2001 (hereinafter referred to as the "1996-2001 agreement"). (Langone Aff. ¶ 17, Exh. 6; Affidavit of Arthur J. Lazazzero ¶ 5).

13. Teamsters Local 25 (hereinafter "Local 25") and USCO are parties to a collective bargaining agreement with effective dates of September 1, 2001 through August 31, 2006 (hereinafter referred to as the "2001-2006 agreement). (Langone Aff. ¶ 17, Exh. 7; Lazazzero Aff. ¶ 8).

14. On April 5, 2001, the Fund's auditor, Tom McMorrow, conducted an audit of USCO Distribution Services, Inc., a/k/a USCO Logistics Services, Inc., hereinafter referred to as "USCO," for the years 1997 through 2000. The audit was done in two parts- January 1, 1997 through March 31, 2000, and April 1, 2000 through December 31, 2000. Mr. McMorrow is now deceased. (Langone Aff. ¶ 13, Exhibits 4, 5).

15. Mr. McMorrow's first audit determined that USCO owed the Fund $14,264.67 for contributions for hours of all employees, including temporary

employees supplied by temporary staffing agencies, from January 1, 1997 through March 31, 2000. (Langone Aff. ¶ 14, Exhibit 4).

16. Mr. McMorrow recommended in his first audit that USCO be charged interest at $95.10 per month, and noted:

> The Payroll records provided by the Employer were not complete. There were obvious indications that many of the records for 'Temporary' employees were missing or that those employees were unable to be identified. The Employer should be asked to complete a self-audit for additional hours of temporary employees during the examination period. The Estimated Deficiency for this period is $3,000.00. (Langone Aff. ¶ 15, Exhibit 4).

17. Mr. McMorrow's second audit determined that USCO owed the Fund $5,912.39 in contributions for hours of all employees, including temporary employees supplied by temporary staffing agencies, from April 1, 2000 through December 31, 2000, and recommended that USCO be charged additional interest at the rate of $39.42 per month. The audit covered both bargaining unit employees and temporary employees supplied by staffing agencies. (Langone Aff. ¶16, Exh. 5).

18. Article VII of the 1996-2001 collective bargaining agreement between Local 829 and USCO, and Article 15 of the 2001-2006 collective bargaining agreement between Teamsters Local 25 and USCO, contain the following language regarding pension contributions:

> This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement. Commencing with the first day of September [1996 or 2001], and for the duration of the current collective bargaining agreement, between Local Union [#829 or #25] and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this

      collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement. (Langone Aff. ¶ 17, Exhs. 6, 7).

19. Both collective bargaining agreements were sent to the Fund's office upon execution (Langone Aff. ¶ 17).

20. The audits were conducted pursuant to the pension provision of the 1996-2001 agreement, which states:

> . . . the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions . . .
> (Langone Aff. ¶ 18, Exh. 6).

21. The Fund was not involved in the negotiations for either the 1996-2001 or the 2001-2006 agreement. (Langone Aff. ¶ 19).

22. It has always been the consistent policy of the Trustees of the Fund that the definition of "temporary employees" as stated in the Standard Participation Agreement and found in the collective bargaining agreements at issue, includes temporary employees supplied by temporary staffing agencies to the contributing employer who perform work within the scope of and/or covered by the collective bargaining agreement. The Trustees of the Fund have consistently required all employers to make contributions for such employees. (Langone Aff. ¶ 20).

23. On or about April 14, 2000, USCO made contributions to the Fund for 468 hours worked by "temporary employees" in March 2000 who were supplied

by temporary staffing agencies. Maureen Boehling, USCO's former office manager, signed the remittance report for March 2000 on the line labeled "prepared by". The report included the handwritten notation "temporary employees". (Langone Aff. ¶ 21, Exh. 8; Affidavit of Jonathan M. Conti, ¶ 2, Exh. 1, pp. 12-13).

24. On or about September 6, 2000, USCO made contributions for 377 hours worked by "temps" in August 2000 who were supplied by a temporary staffing agency. Steven A. Cooke, USCO's Distribution Center Manager, signed the remittance report for August 2000 on the line labeled "prepared by". The report included the handwritten notation "temps", which referred to those employees supplied to USCO by a staffing agency. (Langone Aff. ¶ 22, Exh. 9; Conti Aff. ¶ 2, Exh. 1, pp. 13-14).

25. On or about October 30, 2000, USCO made contributions for 688 hours worked by "temps" in September 2000 who were supplied by a staffing agency. Steven Cooke of USCO signed the remittance report for September 2000 on the line labeled "prepared by". The report included the handwritten notation "temps", which referred to those employees supplied to USCO by a staffing agency. (Langone Aff. ¶ 23, Exh. 10; Conti Aff. ¶ 2, Exh. 1, pp. 15-16).

26. On or about January 1, 2001, USCO made contributions for 836 hours worked by "temps" in December 2000 who were supplied by a staffing agency. Steven Cooke of USCO signed the remittance report for December 2000 on the line labeled "prepared by". The report included the handwritten notation

"temps", which referred to those employees supplied to USCO by a staffing agency. (Langone Aff. ¶ 24, Exh. 11; Conti Aff. ¶ 2, Exh. 1, pp. 16-17).

27. To date, USCO has not made any payments on Mr. McMorrow's April 2001 audit. (Langone Aff. ¶ 25; Conti Aff. ¶ 2, Exh. 1, pp. 10-11).

28. Arthur J. Lazazzero is a Trustee and Business Agent for Teamsters Local 25, hereinafter referred to as "Local 25". His office address is 544 Main Street, Boston, Massachusetts 02129. (Lazazzero Aff. ¶ 1).

29. From 1991 to 1997, Mr. Lazazzero was a Business Agent for the International Brotherhood of Teamsters, Chauffeurs, and Warehouse Employees and Helpers Union, Local Union 829, hereinafter referred to as "Local 829", and from 1998 to March 2000 Mr. Lazazzero served as Principal Officer/Secretary-Treasurer of Local 829. (Lazazzero Aff. ¶ 2).

30. While a Business Agent and later as Principal Officer/Secretary-Treasurer of Local 829, Mr. Lazazzero represented all warehouse employees below the grade of supervisory foreman at USCO Distributions Services, Inc., a/k/a USCO Logistics Services, Inc., at its facility located at 12 Forge Park Drive, Franklin, Massachusetts. (Lazazzero Aff. ¶ 3).

31. The primary business of USCO is third party warehouse and inventory logistics, as employees at USCO's warehouse receive merchandise, store it and then later ship it to other locations. (Lazazzero Aff. ¶ 4; Rocha Aff. ¶ 3).

32. Mr. Lazazzero served as chief negotiator for Local 829 during the collective bargaining negotiations that resulted in the September 1, 1996 through August 31, 2001 collective bargaining agreement between Local 829 and USCO,

hereinafter referred to as the "1996-2001 agreement." (Lazazzero Aff. ¶ 5; Exh. 6, attached to Langone Aff.).

33. On or about March 8, 2000, Local 829 was merged into Local 25, at which time Mr. Lazazzero became a Field Representative for Local 25. He later became a Business Agent and Trustee for Local 25. (Lazazzero Aff. ¶ 6).

34. Following the merger, Mr. Lazazzero continued to represent the warehouse employees below the grade of supervisory foreman at USCO's facility located at 12 Forge Park Drive, Franklin, Massachusetts. (Lazazzero Aff. ¶ 7).

35. Mr. Lazazzero served as the chief negotiator for Local 25 during the collective bargaining negotiations that resulted in the September 1, 2001 through August 31, 2006 collective bargaining agreement between Local 25 and USCO, hereinafter referred to as the "2001-2006 agreement." (Lazazzero Aff. ¶ 8; Exh. 7, attached to Langone Aff).

36. Article I of the 1996-2001 agreement recognizes Local 829 as the exclusive bargaining representative of all employees covered by the agreement, and Article II of the agreement provides that the agreement covers "All Warehouse Employees below the grade of Supervisory Foreman, with the exception of Office Help." (Lazazzero Aff. ¶ 9; Exh. 6, attached to Langone Aff.).

37. Article 2 of the 2001-2006 agreement recognizes Local 25 as the exclusive bargaining representative of all employees covered by the agreement, and provides that the agreement covers "All Warehouse Employees below the

grade of Supervisory Foreman, with the exception of Office Help." (Lazazzero Aff. ¶ 10; Exh. 7, attached to Langone Aff.).

38. Article XIII of the 1996-2001 agreement and Article 27 of the 2001-2006 agreement establish three categories of bargaining unit employees: "Warehouse Person", "Selector", and "Picker-Packer." (Lazazzero Aff. ¶ 11; Exh. 6, attached to Langone Aff.).

39. "Warehouse Persons" handle stock that is delivered to and shipped from the warehouse, and also load and unload trucks. "Selectors" select product located on the warehouse floor, while "Picker-Packers" handle the shipping and receiving and packaging of merchandise. (Lazazzero Aff. ¶ 12; Affidavit of Robert M. Rocha ¶¶ 4, 5).

40. Article VII of the 1996-2001 agreement and Article 15 of the 2001-2006 agreement both prohibit oral modifications of the written agreement, and provide that should such an oral agreement be made by the union or the employer, the oral agreement shall not be binding on the bargaining unit employees or on the Trustees of the New England Teamsters and Trucking Industry Pension Fund. (Lazazzero Aff. ¶ 14; Exhs. 6, 7, attached to Langone Aff.).

41. USCO often supplements the daily work force through the use of temporary employees supplied by a staffing agency. (Lazazzero Aff. ¶ 15; Rocha Aff. ¶ 6).

42. USCO is currently party to an agreement with Adecco North America, LLC ("Adecco") titled "Agreement to Furnish Employees," whereby Adecco

supplies temporary employees to USCO. The current agreement was entered into on March 25, 2002. (Exh. B; Cooke Deposition, Exh. A, p. 21). USCO also has a relationship with Agentry, which also supplies temporary employees to USCO. (Conti Aff. ¶ 1, Exh. 1, p. 21).

43. Article 10 of the 2001-2006 collective bargaining agreement provides that if USCO uses temporary employees on any given day, it will offer a certain amount of voluntary overtime to the bargaining unit members based upon the number of temporary employees used in a particular day. (Lazazzero Aff. ¶ 17; Exh. 7, attached to Langone Aff.).

44. Mr. Lazazzero has never entered into any oral or written agreements with USCO on behalf of Local 829 or Local 25 to modify the terms of the pension language found in Article VII of the 1996-2001 agreement or in Article 15 of the 2001-2006 agreement. (Lazazzero Aff. ¶ 18).

45. Mr. Lazazzero has never agreed that pension contributions are not required by either the 1996-2001 or 2001-2006 collective bargaining agreements for temporary employees supplied to USCO by a staffing agency, but rather has always taken the position that such contributions are required. (Lazazzero Aff. ¶ 19).

46. During the most recent round of collective bargaining negotiations that resulted in the 2001-2006 agreement, USCO's chief negotiator, Eric Peterson, requested that the Union agree to change the language found in the pension provision to eliminate the requirement that USCO make contributions for temporary employees for each hour worked at USCO. The Union took the

position that it would not agree to change the language found in the Pension provision. (Lazazzero Aff. ¶ 20).

47. Article III of the 1996-2001 agreement and Article 5 of the 2001-2006 agreement provide that all new employees shall be on a "Temporary" or "Probationary" basis for a period of thirty working days, and that the completion of thirty consecutive working days qualifies one as a "Regular Employee" and a member of the Union. (Lazazzero Aff. ¶ 21; Exhs. 6, 7, attached to Langone Aff.).

48. During negotiations for both the 1996-2001 and 2001-2006 agreements, the Union took the position that should USCO allow a temporary employee supplied by a temporary agency to work thirty consecutive working days, then that individual would become a Regular bargaining unit employee and a member of the Union. (Lazazzero Aff. ¶ 22).

49. USCO at times has employed the same individual temporary employees for up to two consecutive months at a time, but has made sure not to allow a temporary employee to work thirty (30) consecutive days at the warehouse so as not to trigger the Probationary Period clause of the collective bargaining agreement, whereby any employee who works thirty consecutive working days shall become a regular bargaining unit employee and a member of the Union. USCO has provided temporary employees a day or two off before returning to work at USCO so as not to trigger this thirty consecutive day provision. (Lazazzero Aff. ¶ 23; Rocha Aff. ¶ 15).

50. Pursuant to Section 1.1 of the agreement between USCO and Adecco North America, LLC titled "Agreement to Furnish Employees" (hereinafter referred to as the USCO-Adecco agreement); Adecco supplies temporary employees to USCO in accordance with the job descriptions communicated by USCO to Adecco. (Conti Aff. ¶ 3, Exh. 2).

51. Pursuant to Section 1.4 of the USCO-Adecco agreement, temporary employees supplied to USCO by Adecco perform their duties "under the supervision and control of USCO's designated supervisors, in accordance with USCO's directions and instructions," and must comply with the "rules and regulations, policies and procedures of USCO." (Conti Aff. ¶ 3, Exh. 2).

52. Pursuant to Section 1.5 of the USCO-Adecco agreement, USCO may request the removal of a temporary employee for any reason, and pursuant to Section 1.6, "USCO may terminate or change any assignment for any reason." (Conti Aff. ¶ 3, Exh. 2)

53. Pursuant to Section 1.10(b) of the USCO-Adecco agreement, USCO must review and certify the time records completed by temporary employees supplied by Adecco. (Conti Aff. ¶ 3, Exh. 2).

54. Section 1.11(a) of the USCO-Adecco agreement states that "USCO will supervise, direct and control the day-to-day work and/or tasks performed and to be performed by [temporary employees] while assigned to USCO." (Conti Aff. ¶ 3, Exh. 2).

55. Pursuant to Section 1.11(c) of the USCO-Adecco agreement, USCO must furnish "all tools and other materials, including protective devices, safety

glasses, gloves, instruments and/or other materials required for [temporary employees] to perform their duties to the same extent provided to regular USCO employees." (Conti Aff. ¶ 3, Exh. 2).

56. Under Section 1.11(f) of the USCO-Adecco agreement, temporary employees may operate any work-related vehicles and equipment of USCO used on the warehouse premises designed for product and material handling, such as fork lifts and pallet jacks, so long as the temporary employees are trained on the equipment pursuant to OSHA regulations. (Conti Aff. ¶ 3, Exh. 2).

57. Section 1.11 of the USCO-Adecco agreement states that "USCO shall upon its review, approve time records submitted by [temporary employees]," a task which Distribution Center Manager Steven A. Cooke and other USCO management personnel, perform. (Conti Aff. ¶ 2, Exh. 1, p. 24; Conti Aff. ¶ 3, Exh. 2).

58. Under Section 8.5 of the USCO-Adecco agreement, Adecco shall name USCO as an "Alternate Employer" under the insurance policies it retains for the temporary employees. (Conti Aff. ¶ 3, Exh. 2).

59. Robert M. Rocha has been an employee of USCO since 1990 and has also served as the Union Steward for Teamsters Local 25 at USCO's Forge Park warehouse in Franklin, Massachusetts for the past twelve years. (Rocha Aff. ¶¶ 1, 2).

60. Mr. Rocha holds the position of "Warehouse Person" at USCO. His primary responsibilities are to handle stock in the warehouse, and to load and unload

trucks that both deliver merchandise to the warehouse and ship it to other locations. (Rocha Aff. ¶ 4).

61. Steven Cooke and William Glover are the two main supervisors for the warehouse bargaining unit employees. (Rocha Aff. ¶ 7).

62. Mr. Cooke and Mr. Glover also supervise the temporary employees provided by temporary staffing agencies. (Rocha Aff. ¶ 8; Conti Aff. ¶ 2, Exh. 1, pp. 23-24, 35).

63. When a temporary employee first reports to work at USCO, USCO's supervisors train him with respect to the manner in which the work is to be completed, the various tools and equipment to employ, and advise him as to USCO's work rules and procedures. (Rocha Aff. ¶9; Conti Aff. ¶ 2, Exh. 1, pp. 23-24).

64. Mr. Cooke and Mr. Glover decide where to assign temporary employees in the warehouse, and determine the duration of the temporary employees' particular assignments and projects. (Rocha Aff. ¶ 10).

65. The work performed by the temporary employees is the same work performed by bargaining unit employees, and the temporary employees work side by side with the bargaining unit employees performing this work. (Lazazzero Aff. ¶ 16; Rocha Aff. ¶ 11).

66. There are no supervisors from the temporary employment agency on-site at the USCO warehouse. (Rocha Aff. ¶ 12).

67. Supervisors Cooke and Glover discipline temporary employees and have in the past sent temporary employees home for disciplinary reasons. (Rocha Aff. ¶ 13; Conti Aff. ¶ 2, Exh. 1, p. 29).

68. All tools and equipment needed to work in the warehouse, including hand jacks and pallet jacks, boxes, and packaging materials, are provided by USCO to the temporary employees. (Rocha Aff. ¶ 14; Conti Aff. ¶ 2, Exh. 1, p. 30).

69. Bargaining unit employees work three shifts: 6:00 a.m. to 2:30 p.m., 8:00 a.m. to 4:30 p.m., and 9:00 a.m. to 5:30 p.m., and temporary employees work a shift from 10:00 a.m. to 4:00 p.m. (Conti Aff. ¶ 2, Exh. 1, p. 30).

70. There is no other classification of worker who is working or has worked at USCO's warehouse who is considered to be a "temporary employee" other than the employees supplied by temporary staffing agencies. (Lazazzero Aff. ¶ 24; Rocha Aff. ¶ 16; Conti Aff. ¶ 2, Exh. 1, p. 31).

Dated: October 22, 2004

Respectfully submitted

For the Plaintiff
By His Attorneys,

_____
Catherine M. Campbell (BBO #549397)
Jonathan M. Conti (BBO # 657163)
FEINBERG, CAMPBELL & ZACK, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976