UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2004 OCT 22 P 4: 02

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | C.A. No. 04cv10041 PBS |
| USCO DISTRIBUTION SERVICES, INC., a/k/a USCO LOGISTICS SERVICES, INC. | ) ) ) |  |
| Defendant. | ) ) ) |  |

## AFFIDAVIT OF CHARLES LANGONE

I, Charles Langone, under oath and based on my personal knowledge, hereby depose and state the following:

1. My name is Charles Langone and I am the Fund Manager for the New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund"). I have been the Fund Manager since October 1990. The Pension Fund has its principal place of business at 535 Boylston Street, Boston, Massachusetts 02116.

2. The Fund is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

3. The Fund was established for the purpose of receiving contributions and providing pension benefits to eligible employees pursuant to an Agreement and Declaration of Trust dated April 11, 1958 ("the Trust Agreement"), which has

been amended from time to time. A true and correct copy of the Trust Agreement is attached as Exhibit 1.

4.    The Fund is administered by an eight-member Board of Trustees in accordance with the terms of the Trust Agreement and the Rules and Regulations of the New England Teamsters and Trucking Industry Pension Plan ("Pension Plan" or "Plan"). The Board of Trustees consists of four trustees representing participating local teamster unions and four trustees representing employers contributing to the Fund. A true and correct copy of the 1997 Rules and Regulations of the Pension Plan with amendments through April 30, 2003, is attached hereto as Exhibit 2.

5.    Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements, as defined by Article I, Section 1.08 of the 1997 Rules and Regulations of the Pension Plan, between contributing employers and local Teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements.

6.    Contributing employers to the Fund are defined by Article I, Section 1.09 of the 1997 Rules and Regulations of the Pension Plan.

7.    Participating Local Unions are defined as those unions that have been accepted for participation by the Fund Trustees and have accepted the Trust Agreement in writing pursuant to Article I, Section 1.22 of the 1997 Rules and Regulations of the Pension Plan.

8.    As Fund Manager, I am responsible for the day-to-day administration of the Fund and the maintenance and oversight of all Fund records. Specifically, I ensure that contributions from contributing employers to the Fund are properly processed, that pension credit of Fund participants is accurately calculated and that pension benefits are paid in compliance with the Fund's Trust Agreement and Pension Plan, and in accordance with the directions, policies and procedures of the Fund's Board of Trustees. In addition, I process all appeals of participants and present these appeals to the Board of Trustees.

9.    In the performance of my duties, I have personal knowledge of those documents governing the administration of the Fund including but not limited to the Trust Agreement, the Pension Plan, the relevant collective bargaining agreements, as well as any interpretative guidelines set forth by the Fund's Board of Trustees regarding Plan administration.

10.   Article IV of the Trust Agreement provides that the Trustees of the Fund shall have the power to "construe, with discretionary authority, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any construction adopted by the Trustees in good faith shall be binding upon the unions, the Employers and the Employees and their families, dependents, beneficiaries and/or legal representatives."

11.   Article IV of the Trust Agreement further provides that the Trustees have the authority to "reconcile, determine, interpret and construe, with discretionary authority, any question or dispute arising in connection with definitions of terms, right, status or classification of employees or any other dispute or claim arising

3

under the Plan . . ." Article X of the Trust Agreement provides the Trustees with "full discretionary authority with respect to the interpretation and construction of the Plan."

12.    The Trust Agreement contains a Standard Participation Agreement, a true and accurate copy of which is attached hereto as Exhibit 3 and titled "Mandatory Contract Language for Pension Fund," which USCO entered into on September 1, 1982, whereby USCO agreed to include the following pension language in any collective bargaining agreement:

> (a) This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.
> (b) Commencing with the first day of September 1981, and for the duration of the current collective bargaining agreement, between Local Union 829 and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement . . .

13.    On April 5, 2001, the Fund's auditor, Tom McMorrow, conducted an audit of USCO Distribution Services, Inc., a/k/a USCO Logistics Services, Inc., hereinafter referred to as "USCO," for the years 1997 through 2000. The audit, a true and accurate copy of which is attached hereto as Exhibits 4 and 5, was done in two parts- January 1, 1997 through March 31, 2000, and April 1, 2000 through December 31, 2000. Mr. McMorrow is now deceased.

14.    Mr. McMorrow's first audit determined that USCO owed the Fund $14,264.67 for contributions for all employees, including temporary

4

employees supplied by temporary staffing agencies from January 1, 1997
through March 31, 2000.

15.    Mr. McMorrow recommended in his first audit that USCO be charged interest
at $95.10 per month, and noted:

> The Payroll records provided by the Employer were not complete. There
> were obvious indications that many of the records for 'Temporary'
> employees were missing or that those employees were unable to be
> identified. The Employer should be asked to complete a self-audit for
> additional hours of temporary employees during the examination period.
> The Estimated Deficiency for this period is $3,000.00.

16.    Mr. McMorrow's second audit determined that USCO owed the Fund
$5,912.39 in contributions for hours of all employees supplied by temporary
staffing agencies from April 1, 2000 through December 31, 2000, and
recommended that USCO be charged additional interest at the rate of $39.42
per month. The audit covered both bargaining unit employees and temporary
employees supplied by staffing agencies.

17.    Both Article VII of the collective bargaining agreement between International
Brotherhood of Teamsters, Chauffeurs and Warehouse Employees and
Helpers Union, Local 829, and USCO Distribution Services, Inc. (hereinafter
referred to as the "1996-2001 agreement", a true and accurate copy of which
is attached hereto as Exhibit 6), and Article 15 of the collective bargaining
agreement between Teamsters Local 25 and USCO Distribution Services, Inc.
(hereinafter referred to as the "2001-2006 agreement, a true and accurate copy
of which is attached hereto as Exhibit 7), were sent to the Fund office by the
parties, and contain the following language regarding pension contributions:

> This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement. Commencing with the first day of September [1996 or 2001], and for the duration of the current collective bargaining agreement, between Local Union [#829 or #25] and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement.

18.    The audits were conducted pursuant to the pension provision of the 1996-

2001 agreement, which states:

> . . . the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope of and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions . . .

19.    The Fund was not involved in the negotiations for either the 1996-2001

agreement or the 2001-2006 agreement.

20.    It has always been the consistent policy of the Trustees of the Fund that

the definition of "temporary employees" as stated in the Standard

Participation Agreement and found in the collective bargaining

agreements at issue, includes temporary employees supplied by temporary

staffing agencies to the contributing employer who perform work within

the scope of and/or covered by the collective bargaining agreement. The

Trustees of the Fund have consistently required all employers to make

contributions for such employees.

6

21.    On or about April 14, 2000, USCO made contributions to the Fund for 468 hours worked by "temporary employees" in March 2000 who were supplied by temporary staffing agencies. Maureen Boehling of USCO signed the remittance report for March 2000 on the line labeled "prepared by". The report, a true and accurate copy of which is attached hereto as Exhibit 8, included the handwritten notation "temporary employees."

22.    On or about September 6, 2000, USCO made contributions for 377 hours worked by "temps" in August 2000 who were supplied by a temporary staffing agency. Steven Cooke of USCO signed the remittance report for August 2000 on the line labeled "prepared by". The report, a true and accurate copy of which is attached hereto as Exhibit 9, included the handwritten notation "temps."

23.    On or about October 30, 2000, USCO made contributions for 688 hours worked by "temps" in September 2000 who were supplied by a staffing agency. Steven Cooke of USCO signed the remittance report for September 2000 on the line labeled "prepared by". The report, a true and accurate copy of which is attached hereto as Exhibit 10, included the handwritten notation "temps."

24.    On or about January 1, 2001, USCO made contributions for 836 hours worked by "temps" in December 2000 who were supplied by a staffing agency. Steven Cooke of USCO signed the remittance report for December 2000 on the line labeled "prepared by". The report, a true and

accurate copy of which is attached hereto as Exhibit 11, included the handwritten notation "temps."

25. To date, USCO has not made any payments on Mr. McMorrow's April 2001 audit.


SIGNED UNDER THE PENALTIES OF PERJURY THIS _21 ___ DAY OF OCTOBER, 2004.

_____
Charles Langone