UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES LANGONE, as FUND MANAGER )
for the NEW ENGLAND TEAMSTERS and )
TRUCKING INDUSTRY PENSION FUND, )
    Plaintiff, )
)
v. )    Civil Action No. 04-10041-PBS
)
USCO DISTRIBUTION SERVICES, INC. )
a/k/a USCO LOGISTICS SERVICES, INC. )
    Defendant. )
)

**USCO DISTRIBUTION SERVICES, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

USCO Distribution Services, Inc. submits this Memorandum of Law in Support of its Motion for Summary Judgment.[1] The Plaintiff, Charles Langone, Fund Manager for the New England Teamsters and Trucking Industry Pension Fund (collectively referred to herein as "the Fund"), alleges that USCO has failed to make contributions to the Fund for certain temporary workers pursuant to the terms of a collective bargaining agreement between USCO and the International Brotherhood of Teamsters, Local No. 25 ("Local No. 25"). The plain language of the operative collective bargaining agreements and fund documents, however, require *only* that USCO make contributions to the fund for "employees" of the company. The undisputed material facts demonstrate unequivocally that the temporary workers at issue are not employees of USCO but rather are employed by an outside agency. Accordingly, this Court should grant USCO's Motion as a matter of law.

---

[1] In 2002, Kuehne & Nagel Logistics purchased USCO Distribution Services, Inc. Throughout this Memorandum of Law, defendant collectively refers to Kuehne & Nagel and USCO as "USCO."

## II. FACTUAL BACKGROUND

USCO has filed with its Motion for Summary Judgment a Statement of Undisputed Facts. USCO requests that the Court refer to this Statement of Undisputed Facts (hereinafter "Facts") for the factual background applicable to this Memorandum.

## II. LEGAL ARGUMENT

### A. Summary Judgment Standard.

Under Rule 56 of the Federal Rules of Civil Procedure, this Court shall grant a motion for summary judgment where the pleadings, depositions, answers to interrogatories and admissions show that there is no issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. Based upon the undisputed material facts and documents which govern USCO's obligations to contribute to the Fund, it is plain that USCO is entitled to judgment as a matter of law.

### B. None of the Relevant Documents Require that USCO Contribute to the Pension Plan For Non-Employee Temporary Workers.

All the documents defining USCO's contribution obligations call for USCO to make contributions to the Fund on behalf of "employees." None define "employee" to include temporary workers employed by outside staffing agencies. The Fund documents even go so far as to define an "employee" in a manner which on its face excludes temporary workers such as those for which the Fund now seeks contributions.

Under section 515 of ERISA, employers must contribute to multiemployer benefit plans "in accordance with the terms and conditions of (the) plan" or collective bargaining agreement between the employer and the union. See 29 U.S.C. §1145. Courts must enforce the unambiguous language of these operating "writings according to their terms." Central States, Southeast & Southwest Areas Pension Fund v. Kroger, 73 F.3d 727, 730-31 (7th Cir. 1996)

(finding CBA's definition of part-time ambiguous); see also Pride Hyundai, Inc. v. Chrysler Fin. Co., L.L.C., 2004 U.S. App. LEXIS 10455, at *32, *33 (D. Mass. 2004) ("The usual rule in Massachusetts is that where the wording of the contract is unambiguous, the contract must be enforced according to its terms" (internal quotation omitted)). Further, an employer is required to make contributions to the fund only for those employees clearly identified in the operative documents. Chicago Area Int'l Brotherhood of Teamsters v. Kennecott Bros. Co., 1998 U.S. Dist LEXIS 3115 (N.D. Ill. 1998) (finding fund could not compel contributions for class of workers not covered by CBA). Courts should not interpret a contract in a way that renders a "word, clause or phrase meaningless or relegates it to the category of mere surplusage." Crowe v. Bolduc, 365 F.3d 86, 97 (1st Cir. 2004) (finding agreement ambiguous and rejecting party's suggested interpretation because it would "read out" a provision of the contract).

The unambiguous language of the collective bargaining agreements ("CBAs") and Fund documents reveals that USCO is required to make contributions to the Plan only on behalf of employees, not temporary workers hired by a temporary staffing agency, who are not USCO employees.

### 1. **The CBAs.**

Both CBAs plainly state that USCO must make contributions to the pension fund on behalf of **employees** and state nothing about contributions on behalf of temporary workers. (Facts at ¶¶ 30, 31; Exhibits C and D to Keating Aff.). The pension articles of the CBAs call for USCO to contribute to the fund for all "employees" of USCO, including temporary, casual and probationary "employees." (Id.) However, temporary employee and probationary employee are defined terms which refer to new USCO employees during their first thirty days at USCO, not to

"temporary workers" whom USCO leases from temporary staffing agencies to assist on large projects for short periods of time. (Facts at ¶ 32; Exhibit D to Keating Aff., Article 5).

It is plain from language throughout the CBAs that "temporary workers" are not USCO "employees" under the CBAs. Nowhere in either CBA are temporary workers – who are employed by temporary staffing agencies – defined as USCO employees, including Article 15 of the current CBA which concerns the Pension. (Facts at ¶ 31; Exhibit D to Keating Aff.).

Where the current CBA specifically addresses "temporary workers" like the ones for which the Fund now demands contributions, it treats them differently from "Temporary" or "Probationary" USCO employees as defined in Article 5. (Id. at ¶ 32). Unlike Article 5 of the current CBA governing USCO Temporary or Probationary employees in the Probationary Period, which provides specifically that the terms of Article 15 governing the Pension apply to these employees, Article 10, governing temporary workers, makes no mention of the applicability of pension article (Article 15) to payments made to temporary workers. (Id. at ¶ 33; Exhibit D to Keating Aff.). This is not an inadvertent oversight. In fact, during negotiations for this most recent Collective Bargaining Agreement, USCO's bargaining representative, Eric Peterson, ultimately agreed to the language "temporary workers" as opposed to "temporary employees," because it highlighted the important distinction between those individuals brought in on an as-needed basis through a temporary agency (temporary workers) versus those individuals temporarily employed on a probationary basis by USCO (temporary employees). (Id. at ¶ 33; Peterson Aff. at ¶ 5) Finally, Langone himself admitted in his deposition that the CBAs do not require USCO to make contributions on behalf of individuals who are not USCO employees. (Id. at ¶ 35; Exhibit G to Keating Aff., pp. 19-21).

### 2. **The Fund Documents.**

The unambiguous language of the Fund documents also establishes that USCO is not required to make contributions to the Fund on behalf of temporary workers employed by temporary staffing agencies. 29 U.S.C. §1145. As with the CBAs, the Fund documents refer exclusively to contributions on behalf of "employees." The Fund's mandatory contract language requires USCO to make contributions to the Fund "for each and every **employee**, whether such **employee** is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement . . . ." (Id. at ¶ 36; Exhibit E to the Keating Aff.) (Emphasis added). Article I of the Restated Agreement and Declaration of Trust then defines an "**Employee**" as "any person covered by a collective bargaining agreement between an employer and a Local Union and any full time salaried employee of an employer as defined in Section 1, 2nd paragraph herein." (Id. ¶ 38; Exhibit F to the Keating Aff.). Section 1.15(a) of the Pension Plan Rules and Regulations also states that an "'**Employee**' means a person who is an employee of an Employer and who is covered by a Collective Bargaining Agreement requiring Employer contributions on his behalf." (Id. at ¶ 40; Exhibit F to the Keating Aff.) (emphasis added). Section 2.01 of the Plan Rules and Regulations, entitled "General," also explain that "[t]his Pension Plan is intended primarily to provide retirement benefits for Employees of Contributing Employers . . ." (Id. at ¶ 42). Of course, neither CBA "covers" temporary workers from temporary staffing agencies. (Id. at ¶ 31; Exhibits C and D to the Keating Aff.). Furthermore, Langone himself also admitted in his deposition that none of the Fund documents contains language requiring USCO to make contributions on behalf of individuals who are not USCO

employees, but who are employed by another company. (Id. at ¶ 43; Exhibit G to Keating Aff., pp. 14, 18).

Based upon the plain language of the CBAs and the Fund documents, then, this Court must grant USCO's motion for summary judgment. To do otherwise would effectively "relegate" the term "employee" in the CBAs and Fund documents "to the category of mere surplusage." Crowe, 365 F.3d at 97. None of these documents require USCO to make contributions to the Fund on behalf of non-employee, temporary workers, which is what the workers at issue are and were.

### 3.  Under Established Legal Principles Defining the Term "Employee," Temporary Workers are Not USCO Employees.

As noted above, both CBAs and the Fund documents provide on their faces that contributions are not required unless the individual working at USCO's Franklin facility is an "employee" of USCO. Necessarily, this requires examination of applicable legal principles to determine whether, as a matter of law, the temporary workers from an outside agency were USCO "employees."

Under the factors the First Circuit has considered in determining whether a worker is an "employee" of an employer, the temporary workers at issue in this Action plainly are not USCO employees. These factors include: whether the employer has a right to control the manner and means by which the work is conducted, the skill required to complete the work, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the assigned party, the extent of the hired party's discretion over when and how long to work, whether the work is part of the regular business of the hiring party, whether the hiring party provides benefits, and whether the hiring party treats the hired parties as employees for tax purposes. See Camacho v.

Puerto Rico Ports Authority, 369 F.3d 570, 574 (1st Cir. 2004) (in ADEA case, court found plaintiff was not employee of defendant); Alberty-Velez v. Corporacion De Puerto Rico Para La Difusion Publica, 361 F.3d 1, 7 (1st Cir. 2004) (in Title VII case, court found plaintiff was not employee of defendant); Construction Industries of Massachusetts, Inc. v. Teamsters Local 379, 156 F.3d 13 (1st Cir. 1989)(same, in case under LMRA); Boutilier v. John Alden Life Insurance Co., 2000 U.S. Dist. LEXIS 17243, at *20-*22 (D. Mass. 2000) (in ERISA case, court found plaintiff to be independent contractor, not an employee, and therefore the plan was not governed by ERISA); see also Redd v. Summers, 232 F.3d 933, 939-40 (D.C. Cir. 2000) (considering the method of payment, whether the work is done without supervision, the skill required to do the work, whether the employer furnishes equipment in the work done, the length of time of the individual's employment, the method of payment, the method of termination, whether annual leave is afforded, whether the work is an integral work of the employer's business, whether the worker accumulates retirement benefits, whether the employer pays social security taxes, and the intention of the parties to find tour guide hired by personnel company was not employee). Courts have also applied these factors to determine whether a temporary worker is a company's "employee" as a matter of law. See, e.g., Pfohl v. Farmers Insurance Group, 2004 U.S. Dist. LEXIS 6447, at *15-*20 ( 2004)(finding that temporary full-time insurance adjusters were not State Farm employees and therefore denying certification for a collective action under the FLSA); Dunn v. Uniroyal Chemical Co., Inc., 192 F. Supp.2d 557 (M.D. La. 2001) (finding plaintiff, employed by a temporary staffing agency, was not the employee of company contracting through staffing agency, and therefore granting the company's motion to dismiss plaintiff's Title VII claims).

In evaluating these factors in light of the relationships between USCO and its temporary staffing agencies, it is plain that the temporary workers at issue are not USCO employees as a matter of law. When occasionally necessary, USCO calls upon a temporary staffing agency for temporary assistance during high-volume periods. (Facts at ¶ 6; Cooke Aff. at ¶ 7). USCO has used several different agencies to provide temporary workers, and in 2002, USCO signed a national contract with Adecco for the provision of temporary worker assistance. (Id. at ¶ 8; Cooke Aff. at ¶ 9; see also Exhibit A to Keating Aff.).

Unlike its employees, USCO has no control over which temporary workers it receives from a temporary staffing agency, and USCO does not keep a single temporary worker for as long as 30 days. (Facts at ¶¶ 8, 9; Cooke Aff. at ¶¶ 9, 10). Accordingly, USCO treats temporary workers differently from USCO employees. When arriving at USCO, temporary workers use different methods of accounting for time than USCO employees do. (Id. at ¶ 12; Cooke Aff. at ¶ 13). USCO employees are given swipe cards while temporary workers must use a traditional time clock. (Id.). Further, because USCO employees switch between numerous tasks for different client accounts each day, USCO employees must check in their time to USCO's central dispatch several times per day to swipe their cards so as to accurately account for time spent on each client account. (Id. at ¶ 19; Cooke Aff. at ¶¶ 21, 22). Temporary workers merely clock in and out once per day. (Id.).

USCO cannot directly hire or fire these temporary workers. (Id. at ¶ 11; Cooke Aff. at ¶ 12). Rather, their employer, the agency that provides its services to USCO, is responsible for hiring and termination decisions. (Id.). USCO does not pay temporary workers, and does not provide temporary workers any leave or other benefits, and does not pay payroll and social security taxes associated with their employment. (Id. at ¶ 13; Cooke Aff. at ¶ 14). The

temporary staffing agency that employs the workers assigns, schedules and pays the temporary workers. (Id.; Cooke Aff. at ¶¶ 14, 15).

USCO supervises the temporary workers when they are on-site at the facility to the limited extent necessary given that the work done by temporary workers is basic and menial work which USCO employees will not or do not want to do. (Id. at ¶ 17; Cooke Aff. at ¶ 19). In many instances in which USCO employs a great number of temporary workers at a given time, the temporary agency even sends a lead person to supervise the workers in lieu of any minimal supervision USCO might have provided. (Id.). Temporary workers rarely are disciplined by USCO employees, and in the few instances they are, temporary workers are not subject to the disciplinary processes afforded bargaining unit USCO employees. (Id. at ¶ 18; Cooke Aff. at ¶ 20).

When USCO entered into a national contract with a temporary agency called Adecco, it reinforced in writing its longtime treatment of temporary workers as employees of the temporary employment agencies. Under the Adecco contract, temporary workers are specifically identified as Adecco employees, and each Adecco employee is required to acknowledge in writing that he or she is an Adecco employee and not a USCO employee. (Id. at ¶ 22; Keating Aff. at Exhibit A, §4.1; see also Exhibit D to Adecco Contract). The contract between Adecco and USCO specifically delineates that Adecco, and not USCO, is responsible for screening applicants, checking references, hiring applicants, completing required paperwork for employment of new hires, training and providing orientation for new temporary workers, providing on-site assistance and supervision in some cases, directing the temporary workers' work, paying workers, disciplining workers, paying and providing benefits for temporary workers, insuring and bonding

temporary workers among other responsibilities. (Id. at ¶ 23; Keating Aff. at Exhibit A, §1; see also Exhibit A to Adecco Contract).

Temporary workers do only a minute fraction of the work done by bargaining unit employees of USCO. For example, while USCO employees work with all product, whether palletized or not, temporary workers may only work with loose, unpalletized product. (Id. at ¶ 15; Cooke Aff. at ¶ 17). Temporary workers do not account for product on USCO computer systems, do not weigh product, do not pick product for outbound shipment, create none of the voluminous records kept regarding the product's movement and cannot use any motorized tools or vehicles while on-site at USCO. (Id.). USCO bargaining unit employees do all of these tasks and more. (Id.).

There is nothing ambiguous about either the CBAs or the Fund documents. Each document calls for USCO to make contributions on behalf of certain of its "employees." Mr. Langone himself has admitted that none of these operative documents requires USCO to make contributions on behalf of individuals who are not employees of USCO. (Id. at ¶ 35; Keating Aff., Exhibit G, pp. 19-21). Moreover, it is plain from an evaluation of each of the factors listed in Redd, 232 F.3d at 939-40 and Pfohl, 2004 U.S. Dist. LEXIS 6447, at *15-*20, that the temporary workers at issue are not employees of USCO. Therefore, this Court should find that Plaintiff's claims fail as a matter of law and grant USCO's Motion for Summary Judgment.

### III. CONCLUSION

The terms of the CBAs as well as those of the Fund documents require only that USCO make contributions to the pension fund for its employees. For this reason, and those set forth above, the Plaintiffs' claims must fail. USCO requests that this Court grant its Motion for Summary Judgment.

> Respectfully submitted,
>
> USCO DISTRIBUTION SERVICES, INC.,
> a/k/a USCO LOGISTICS SERVICES, INC.
>
> By its attorneys,
>
> _____
> Gregory C. Keating (BBO # 564523)
> Amy L. Nash (BBO # 647304)
> LITTLER MENDELSON, P.C.
> One International Place, Suite 2700
> Boston, MA 02110
> Telephone: (617) 378-6000

Dated: October 22, 2004