UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLES LANGONE, as FUND MANAGER )
for the NEW ENGLAND TEAMSTERS and )
TRUCKING INDUSTRY PENSION FUND, )
    Plaintiff, )
                                                    )
v.                                                     )   Civil Action No. 04-10041-PBS

USCO DISTRIBUTION SERVICES, INC. )
a/k/a USCO LOGISTICS SERVICES, INC. )
    Defendant. )

## USCO DISTRIBUTION SERVICES, INC.'S OPPOSITION TO CHARLES LANGONE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. INTRODUCTION

USCO Distribution Services, Inc. ("USCO") submits this memorandum in opposition to the Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion").[1] As demonstrated in greater detail below, Plaintiff's Motion misstates the appropriate legal standard of review, posits baseless and misleading legal arguments and trumpets facts which are plainly immaterial.[2]

---

[1] On October 22, 2004, USCO also filed a Motion for Summary Judgment. The arguments made therein are hereby incorporated by reference.

[2] Defendant submits that the issue before this Court is a legal one and that summary judgment in Defendant's favor is appropriate as a matter of law. Therefore, Defendant does not submit a statement of disputed facts, pursuant to Local Rule 56.1. That being said, Defendant notes, as discussed in greater detail *infra*, that many of the allegations contained in affidavits submitted by Plaintiff are contradictory on their face and do not constitute material facts, but rather are self-serving legal conclusions without any factual support whatsoever.

## II. ARGUMENT

### A. Plaintiff Mischaracterizes the Standard of Review Applicable to its Interpretation of USCO's Obligations Under the CBA and Fund Documents Under *Firestone Tire & Rubber Co. v. Bruch.*

Plaintiff's Motion blithely asserts that the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) limits the Court's review of the Fund's determination of USCO's contribution obligations under §515 of ERISA to whether the determination is "arbitrary and capricious." This is patently incorrect, and misrepresents both the Supreme Court's decision and its reasoning.

The Firestone standard is derived directly from trust law, and the Supreme Court specifically and expressly limited its decision to "the appropriate standard of review in §1132(a)(1)(B) actions" by beneficiaries "challenging *denials of benefits* based upon plan interpretation." The Court "express[ed] *no view* as to the appropriate standard of review for actions under other remedial provisions of ERISA." Id. at 108; see also id. at 115 (emphasis added). In the Section 515 context, however, the Fund is nothing more than a third-party beneficiary to a contract, the Collective Bargaining Agreement ("CBA"). Under basic contract law, a third-party beneficiary's rights are limited to the four corners of the contract. Id. at 112-13. Thus, Firestone is irrelevant. Unless the employer agreed to contribute on behalf of temporary workers, all the deferential review in the world cannot create that contractual obligation out of thin air.

No court in the First Circuit has ever extended the application of the arbitrary and capricious standard to situations involving § 515 of ERISA.[3] Because this is not a denial of

---

[3] The two cases cited by the Fund similarly speak only to the standard of review for an administrator's interpretation of benefits in denial of benefits cases under §1132(a)(1)(B). See Pari-Fasano v. ITT Hartford Life and Accident Ins. Co., 230 F.3d 415, 418-19 (1st Cir. 2000) (determining the "standard of review of an insurer's benefits

2

benefits case between the Fund and a beneficiary under §1132 of ERISA, the Fund's determination is not entitled to deferential review, but rather is subject to a *de novo* review.

### B. The Plaintiff's Construction of the Relevant Language in the CBAs and Fund Documents Does Not Survive a *De Novo* Review.

Under a *de novo* review, a Court must review the Plaintiff's interpretation of the relevant documents as it interprets any contract, "by looking to the terms of the plan and other manifestations of the parties' intent." Firestone, 489 U.S. at 112-13. The Plaintiff's interpretation of USCO's contribution obligations does not survive this review.

The Plaintiff urges the Court to ignore the term "employee" when this term has grave legal significance in this matter. An employer is required to make contributions to the fund only for those individuals clearly identified in the operative documents. See Chicago Area Int'l Brotherhood of Teamsters v. Kennecott Bros. Co., 1998 U.S. Dist LEXIS 3115 (N.D. Ill. 1998) (finding fund could not compel contributions for class of workers not covered by CBA) (emphasis added). Each and every relevant document, including both CBAs and all of the Fund's governing documents provide that USCO must only make payments to the Fund for each "employee." (See the CBAs, attached as Exhibits C and D to the Affidavit of Gregory Keating ("Keating Aff."), submitted with USCO's Motion for Summary Judgment; see also the Fund documents, attached as Exhibits E, F and G to the Keating Aff.).

Plaintiff's Motion devotes lengthy passages to whether the temporary workers leased from staffing agencies do bargaining unit work. This argument attacks a straw man. Section 515 of ERISA requires employers to contribute to multiemployer benefit plans "in accordance with the terms and conditions of (the) plan" or collective bargaining agreement between the employer

---

eligibility determination"); Diaz v. Seafarers Int'l Union, 13 F.3d 454 (1st Cir. 1994) (action brought under §1132(a)(1)(B) of ERISA).

3

and the union. See 29 U.S.C. §1145. Based upon the plain language of the pension provisions in the CBAs, the Fund documents, and all other documents defining USCO's obligations to the Fund, it is simply irrelevant that an individual may do the same work as a member of the bargaining unit when, as here, that individual is not a USCO employee.

The Plaintiff also blatantly mischaracterizes the content of the current CBA. Page 11 of the Plaintiff's Memorandum of Law unbelievably asserts that "[t]here is nothing in the collective bargaining agreement that states or implies that temporary employees supplied by a temporary staffing agency are not 'temporary employees' under the agreement." This is absurd. Amazingly, Plaintiff not only ignores the term "temporary worker" entirely, as if it does not exist in the text of the CBA, but also conveniently overlooks an obvious distinction between temporary workers and temporary employees in the plain text of the CBA. Article 5 of the current CBA specifically provides that "temporary employee" is the status of a new USCO employee during his or her first 30 days after joining the company, before becoming a "permanent or regular" employee. (See Exhibit D to Keating Aff.). Moreover, Article 5 specifically requires USCO to make contributions to the Fund on behalf of "temporary employees" during their 30-day probation period. (Id.) On the other hand, Article 10 of the CBA specifically governs the payment of overtime to bargaining unit employees when USCO uses "temporary workers" or "temps" from staffing agencies. Article 10 does not require USCO to make contributions to the Fund on behalf of these "temporary workers."[4] (Id.) Such flagrant

---

[4] It is obvious from the Affidavit of Arthur J. Lazzazero, submitted by the Plaintiff in support of its Motion, that the Plaintiff understands the distinction between "temporary employees" and "temporary workers." In ¶¶ 21 through 23 of his affidavit, Mr. Lazzazero states that the Union took the position in negotiations for the last collective bargaining agreement that USCO should allow temporary workers supplied by agencies to work thirty consecutive days so that they could become a bargaining unit employee and member of the union, but that USCO has not allowed this to occur. Plainly, then, the Union and USCO understand that there is a difference between temporary workers provided by a staffing agency and those who can become "employees" of USCO.

disregard for this important distinction in the CBA speaks volumes about the hollow averments emanating from Plaintiff's Motion.

Finally, the cases cited in Plaintiff's Motion to support its interpretation of the term "temporary employee" are factually inapposite. In National Shopmen Pension Fund v. Burtman Ironworks, Inc., 148 F. Supp.2d 60 (D.D.C. 2001), the Court noted that because the CBA's pension provision "did not specifically distinguish or exclude temporary employees, the agreement require(d) contributions on their behalf." Here, however, the CBA requires only that USCO make contributions on behalf of "employees," and indeed does distinguish (in Articles 5 and 10 of the CBA) between "temporary employees" and "temporary workers" supplied by a temporary staffing agency. (See Exhibit D to the Keating Aff.). The CBA in Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge B.P.O.E. No. 1450, 827 F.2d 1324 (9th Cir. 1987) is similarly distinguishable as it, too, unlike the CBA between USCO and Local 25, did not exclude or distinguish temporary workers from "employees."

While on page 11 of its Memorandum in Support of its Motion for Partial Summary Judgment, the Plaintiff accuses USCO of attempting to render terms in the CBAs and Fund documents "meaningless," it is plain as day that the Plaintiff's Motion urges this Honorable Court to render the terms "employee," "temporary employee" and "temporary worker" meaningless. The term "employee" has legal meaning and must be construed as such, and, contrary to Plaintiff's bald and unsupported contention, the CBA on its face reflects a difference between contain "temporary employees" and "temporary workers."[5]

---

[5] Plaintiff's Motion makes much of four isolated instances in which USCO made payments to temporary employees. First, such argument should not even be considered as it is inadmissible parol evidence. The Fund may not point to parol evidence to interpret USCO's obligations under the CBA and Fund documents because the obligations are plain from the unambiguous text of these operative documents: USCO must only make contributions to the Fund on behalf of certain USCO employees. Central States, Southeast & Southwest Areas Pension Fund v. Kroger, 73 F.3d 727, 730-31 (7th Cir. 1996) (finding CBA's definition of part-time ambiguous); see also Pride Hyundai, Inc. v. Chrysler Fin. Co., L.L.C., 369 F.3d 603, 616 (1st Cir. 2004) ("The usual rule in Massachusetts is that where the

5

### D. The Temporary Workers in Question are Not USCO Employees.

Plaintiff has attached to its Motion two self-serving affidavits (of Messrs. Rocha and Lazzazero), containing misleading statements concerning USCO's treatment of temporary workers it receives from temporary staffing agencies. For example, without <u>any</u> specific factual support, Mr. Rocha's Affidavit boldly states that USCO employees "supervise" and "discipline" temporary workers. See Rocha Aff. at ¶¶ 8, 13. While USCO employees may loosely supervise and discipline temporary workers, they do so only to the limited extent they would supervise or discipline any independent contractor who enters the facility. (Cooke Aff. II at ¶¶10-13). Mr. Lazzazero, who himself admits in his Affidavit that he negotiated the last CBA, demonstrates his ignorance of the plain language of that document, and its express reference to "temporary workers," when he states that "there is no other classification of employee who is working or has worked at USCO's warehouse who is considered to be a 'temporary employee' other than the employees supplied to USCO by temporary staffing agencies." (Lazzazero Aff. at ¶ 24). Amazingly, Mr. Lazzazero then acknowledges the distinction between "temporary employees"

---

wording of the contract is unambiguous, the contract must be enforced according to its terms" (internal quotation omitted)).

Second, even assuming, *arguendo*, that the Fund may appeal to parol evidence to determine the parties' intent under the operative documents, these four payments, which were made in error -- are far outweighed by the dozens of occasions since 2000 in which USCO did not make contributions to the Fund on behalf of temporary workers both before and after the few occasions in which it did. During a brief period in mid-2000 and early 2001, USCO submitted four contributions worksheets to the Fund that included contributions to be made on behalf of temporary workers from temporary staffing agencies. (See Supplemental Affidavit of Steven A. Cooke in Support of USCO's Opposition to Plaintiff's Motion for Partial Summary Judgment, hereinafter "Cooke Aff. II," submitted herewith as Exhibit 1, ¶4). These worksheets were submitted when a newly-hired executive mistakenly assumed that USCO should make contributions on behalf of temporary workers from temporary staffing agencies. (Id. ¶5). When USCO's superiors realized that contributions had been made to the Fund on behalf of temporary workers, they immediately directed that the no more contributions be made and advised all involved that USCO was not required to make contributions to the pension fund on behalf of temporary workers. (Id. ¶6). This, of course, was consistent with USCO's policy over 20 years that it was not required to make contributions on behalf of temporary workers. Thus, even if this Honorable Court were to admit parol evidence, such evidence supports USCO's position that it is not required to make contributions to the Fund on behalf of temporary workers.

6

and "temporary workers," which he claims does not exist, in the very same Affidavit, admitting that during negotiations for the last CBA, the Union argued that USCO should allow temporary workers supplied by agencies to work thirty consecutive days so they could become bargaining unit employees and members of the union. (Lazzazero Aff. at ¶¶ 21-23).

Despite the self-serving rhetoric in these Affidavits, however, numerous <u>undisputed</u> facts establish that the temporary workers for which the Fund currently seeks contributions are <u>not</u> USCO employees as a matter of law. These include the following:

- USCO cannot directly hire or fire temporary workers. (Statement of Undisputed Facts submitted in Support of USCO's Motion for Summary Judgment, hereinafter "Facts," at ¶ 11; Cooke Aff. at ¶ 12; Cooke Aff. II at ¶ 13). Rather, the agency which provides its services to USCO, as the workers' employer, is responsible for hiring and termination decisions. (<u>Id.</u>).

- USCO does not pay temporary workers, does not provide temporary workers any leave or other benefits, and does not pay payroll and social security taxes associated with their employment. (Facts at ¶ 13; Cooke Aff. at ¶ 14). The temporary staffing agency which employs the workers assigns, schedules and pays them. (Facts at ¶ 13; Cooke Aff. at ¶¶ 14, 15).

- As the Fund admits, the shift for temporary workers is fixed and is different from the shifts for USCO employees. Temporary workers work from 10:00 a.m. to 4:00 p.m., while USCO employees work shifts of either 6:00 a.m. to 2:30 p.m., 8:00 a.m. to 4:30 p.m., or 9:00 a.m. to 5:30 p.m. (Conti Aff. ¶ 2).

- Unlike its employees, USCO has no control over which temporary workers it receives from a temporary staffing agency, and USCO has not and does not keep a single temporary worker for as long as 30 consecutive days. (Facts at ¶¶ 8, 9; Cooke Aff. at ¶¶ 9, 10).

- When arriving at USCO, temporary workers use different methods of accounting for time than do USCO employees. (Facts at ¶ 12; Cooke Aff. at ¶ 13). USCO employees are given swipe cards while temporary workers must use a traditional time clock. (<u>Id.</u>).

- Temporary workers are not subject to the disciplinary processes afforded bargaining unit USCO employees. (Facts at ¶ 18; Cooke Aff. at ¶ 20; Cooke Aff. II at ¶12).

- Because USCO employees switch between numerous tasks for different client accounts each day, USCO employees must check in their time to USCO's central dispatch several times per day to swipe their cards so as to accurately account for

7

time spent on each client account. (Facts at ¶ 19; Cooke Aff. at ¶¶ 21, 22). Temporary workers merely clock in and out once per day. (Id.).

- While USCO supervises the temporary workers when they are on-site at the facility, this supervision is quite limited given that the work done by temporary workers is basic and menial. (Facts at ¶ 17; Cooke Aff. at ¶ 19; Cooke Aff. II at ¶¶ 10-13).

- The Adecco contract between USCO and Adecco for the provision of temporary workers provides that workers are provided "on the basis of a particular job description" and that USCO cannot change the job description for a worker without Adecco's prior written approval. (Exhibit A to Keating Aff., §1.11).

- The Detailed Scope of Services, which is Exhibit A to the Adecco Contract, provides that Adecco provides on-site supervisors to supervise the workers. (Exhibit A to Keating Aff., §12.4).

- Under the Adecco contract, temporary workers are specifically identified as Adecco employees, and each Adecco employee is required to acknowledge in writing that he or she is an Adecco employee and not a USCO employee. (Facts at ¶ 22; Exhibit A to Keating Aff., §4.1; see also Exhibit D to Adecco Contract).

- The contract between Adecco and USCO specifically delineates that Adecco, and not USCO, is responsible for screening applicants, checking references, hiring applicants, completing required paperwork for employment of new hires, training and providing orientation for new temporary workers, providing on-site assistance and supervision in some cases, directing the temporary workers' work, paying workers, disciplining workers, paying and providing benefits for temporary workers, insuring and bonding temporary workers among other responsibilities. (Facts at ¶ 23; Keating Aff. at Exhibit A, §1; see also Exhibit A to Adecco Contract).

The overwhelming undisputed evidence all points to the conclusion that the temporary workers provided by a temporary staffing agency are not USCO employees under the relevant factors. Therefore, this Court should deny Plaintiff's Motion and grant USCO's Motion for Summary Judgment.

## III.    CONCLUSION

For the reasons set forth above, and in USCO's Motion for Summary Judgment, the Plaintiffs' claims must fail. USCO requests that this Court deny Plaintiff's Motion for Partial Summary Judgment and grant its Motion for Summary Judgment.

                  Respectfully submitted,

                  USCO DISTRIBUTION SERVICES, INC.,
                  a/k/a USCO LOGISTICS SERVICES, INC.

                  By its attorneys,

                  _____
                  Gregory C. Keating (BBO # 564523)
                  Amy L. Nash (BBO # 647304)
                  LITTLER MENDELSON, P.C.
                  One International Place, Suite 2700
                  Boston, MA  02110
                  Telephone:  (617) 378-6000

Dated:  November 9, 2004
Boston:4600.2 016853.1000

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney on record for each other party by mail/hand delivery on: 11/9/04

_____