UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES LANGONE, as FUND MANAGER ) <br> for the NEW ENGLAND TEAMSTERS and ) <br> TRUCKING INDUSTRY PENSION FUND, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> USCO DISTRIBUTION SERVICES, INC. ) <br> a/k/a USCO LOGISTICS SERVICES, INC. ) <br> Defendant. ) <br> ) | Civil Action No. 04-10041-PBS |

**AFFIDAVIT OF STEVEN A. COOKE IN SUPPORT OF DEFENDANT
USCO DISTRIBUTION SERVICES INC.'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Steven A. Cooke, being duly sworn, hereby state and depose as follows:

1.  I am the Distribution Center Manager at Kuehne & Nagel Logistics, Inc., which operates a facility in Franklin, Massachusetts. In 2001, Kuehne & Nagel purchased USCO Distribution Services, Inc. Throughout this Affidavit, I refer to Kuehne & Nagel and USCO collectively as "USCO."

2.  I am familiar with the operations at USCO's Franklin, Massachusetts facility, including its practices with respect to making contributions to the Pension Fund.

3.  USCO's nearly uniform and consistent practice during my time with the Company was that it did not make contributions to the Fund on behalf of temporary workers from temporary staffing agencies.

4.  During a short period of months from mid-2000 through early 2001, on four occasions, USCO submitted worksheets to the Fund indicating it was making contributions to the Fund on behalf of temporary workers from temporary staffing agencies.

Boston:4640.1 016853.2003

5. These four worksheets were submitted because a new executive who had recently joined the company erroneously believed that USCO should make contributions on behalf of temporary workers from temporary staffing agencies.

6. When superiors at USCO realized that contributions mistakenly had been made to the Fund on behalf of temporary workers, they immediately directed that we stop making them and confirmed to all involved that USCO was not required to make contributions to the pension fund on behalf of temporary workers.

7. An office clerk with little knowledge of the manner in which USCO operates filled out one of the four contributions worksheets and erroneously stated that the contributions were for "temporary employees" as opposed to temporary workers.

8. As the Distribution Center Manager at USCO's Franklin, Massachusetts facility, I also am familiar with USCO's use of temporary workers from temporary staffing agencies.

9. USCO has no control over what temporary workers it receives from day-to-day from the temporary staffing agency.

10. USCO supervises temporary workers as it would any independent contractor, such as a cleaning person, plumber or electrician.

11. USCO supervisors (including, in some instances, bargaining unit employees) merely tell temporary workers what tasks they will complete, and explain where the temporary workers are to complete their tasks. USCO supervisors supervise the temporary workers throughout the day to a much lesser extent than they supervise bargaining unit employees.

12. Any "discipline" to which USCO subjects a temporary worker is the same as "discipline" directed to any independent contractor, such as a janitor or other similar individual.

If the temporary worker does not perform the task assigned, USCO can send the temporary worker home. Bargaining unit employees cannot be disciplined in this way.

13.  Although USCO can dismiss a temporary worker from his or her tasks for the day, USCO has no ability to fire a temporary worker from his employment at the temporary staffing agency.

Signed under the pains and penalties of perjury on this 9th day of November 2004.

_____
Steven A. Cooke