1

# ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04cv10041 PBS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CHARLES LANGONE, as FUND MANAGER         \*
of the NEW ENGLAND TEAMSTERS AND         \*
TRUCKING INDUSTRY PENSION FUND,          \*
            Plaintiff,                   \*
                                         \*
        V                                \*
                                         \*
USCO DISTRIBUTION SERVICES, INC.,        \*
a/k/a USCO LOGISTICS SERVICES, INC.,     \*
            Defendant.                   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Deposition of STEVEN A. COOKE, taken on behalf of the Plaintiff, pursuant to Notice under the Federal Rules of Civil Procedure, before Janice A. Maggioli, RPR, RMR, CRR, and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Feinberg, Campbell & Zack, 177 Milk Street, Boston, Massachusetts, on October 12, 2004 commencing at 11:05 a.m.

MAGGIOLI REPORTING SERVICES, INC.   (781) 356-2636

| | | |
|---|---|---|
| 1 | A. | Yes. |
| 2 | Q. | And what role do you play? |
| 3 | A. | I sign the document that's forwarded to the |
| 4 | | Teamsters union. |
| 5 | Q. | Is that your only role, signing the document? |
| 6 | A. | Yes. |
| 7 | Q. | So you don't record the hours on the document? |
| 8 | A. | No. |
| 9 | | (Exhibit 3, Employer Remittance report, |
| 10 | | marked for identification.) |
| 11 | Q. | Showing you what's been marked as Exhibit 3, do |
| 12 | | you recognize that document? |
| 13 | A. | Yes. |
| 14 | Q. | And would that be one of the documents that you |
| 15 | | referred to earlier in which you sign the -- an |
| 16 | | example of a document that you would sign that |
| 17 | | would be sent to the pension fund? |
| 18 | A. | An example. |
| 19 | Q. | Do you know whose signature is on the line next |
| 20 | | to "prepared by"? |
| 21 | A. | Yes. |
| 22 | Q. | Who is that? |
| 23 | A. | Maureen Boehling, B-O-E-H-L-I-N-G. |
| 24 | Q. | And does she still work with the company? |

| | | |
|---|---|---|
| 1 | A. | No. |
| 2 | Q. | Do you know when she left the company? |
| 3 | A. | Not the exact date. |
| 4 | Q. | Do you know what her position was with the |
| 5 | | company as of March 2000? |
| 6 | A. | Office manager. |
| 7 | Q. | Have you ever seen this particular document |
| 8 | | prior to today? |
| 9 | A. | Unsure as there's no signature on my part. |
| 10 | | (Exhibit 4, Employer Remittance report, |
| 11 | | marked for identification.) |
| 12 | Q. | I'm showing you what's been marked as Exhibit |
| 13 | | No. 4.  Do you recognize that document? |
| 14 | A. | Yes. |
| 15 | Q. | Can you identify it for me, please? |
| 16 | A. | New England Teamsters and Trucking Industry |
| 17 | | Pension Fund. |
| 18 | Q. | Would you agree that this is a remittance |
| 19 | | report for August of 2000? |
| 20 | A. | Yes. |
| 21 | Q. | Is this the type of document that you referred |
| 22 | | to earlier that is provided to the pension fund |
| 23 | | by USCO? |
| 24 | A. | Yes. |

```
 1   Q.   And next to the line marked "prepared by," do
 2        you know whose signature that is?
 3   A.   Yes.
 4   Q.   And whose signature is that?
 5   A.   Steven A. Cooke.
 6   Q.   And is that you, sir?
 7   A.   Yes.
 8   Q.   And did you review this document prior to
 9        signing it?
10   A.   Yes.
11   Q.   On the last line where it is spelled out in
12        capitals "T-E-M-P-S," is that your handwriting?
13   A.   No.
14   Q.   Do you have any idea what that refers to, to
15        whom that is referring?
16   A.   Temps.
17   Q.   And who -- do you know who those temps are?
18   A.   Temporary workers.
19   Q.   And would those be temporary workers supplied
20        by a company known as Adecco?
21   A.   Unsure.
22   Q.   Would those be temporary workers supplied by an
23        outside staffing agency?
24   A.   Yes.
```

```
 1                (Exhibit 5, Employer Remittance report,
 2           marked for identification.)
 3                     MR. KEATING:  Can I go off the
 4      record for a second?
 5                     (Discussion off the record.)
 6   Q.  Showing you what's been marked Exhibit 5, do
 7       you recognize that document?
 8   A.  Yes.
 9   Q.  Can you identify it for me?
10   A.  New England Teamsters and Trucking Industry
11       Pension Fund.
12   Q.  And would this be one of the remittance reports
13       that's supplied to the fund on behalf of USCO?
14   A.  Yes.
15   Q.  And whose signature is next to the line
16       "prepared by"?
17   A.  Steven A. Cooke.
18   Q.  And on the bottom line there is the word
19       "temps."  Is that your handwriting?
20   A.  No.
21   Q.  Do you know whose handwriting that is?
22   A.  Unsure.
23   Q.  In reviewing this document, to whom did you
24       believe that the word "temps" in the 688 under
```

```
 1          the column marked "hours" is referring to?
 2    A.    Temporary workers.
 3    Q.    And those would be those individuals supplied
 4          by a staffing agency?
 5    A.    Yes.
 6              (Exhibit 6, Employer Remittance report,
 7              marked for identification.)
 8                  MR. KEATING:  Do we have to do
 9          this one by one?
10                  MR. CONTI:  What's that?  I only
11          have one more.
12                  MR. KEATING:  Okay.
13    Q.    Showing you what's been marked as Exhibit 6, do
14          you recognize that document?
15    A.    No.
16    Q.    Showing you what's been marked Exhibit 6, can
17          you identify that document?
18    A.    New England Teamsters and Trucking Industry
19          Pension Fund.
20    Q.    Have you seen it prior to today?
21    A.    Yes.
22    Q.    And next to the line marked "prepared by," is
23          that your signature?
24    A.    Yes.
```

1  Q.   And at the bottom the word "temps," is that
2       your handwriting?
3  A.   Yes.
4  Q.   And to whom were you referring when you wrote
5       the word "temps"?
6  A.   Temporary workers.
7  Q.   Employed by an outside agency; is that correct?
8  A.   Yes.
9  Q.   And pursuant to this form -- to this remittance
10      report, am I correct that 836 hours were
11      reported to the pension fund; is that correct?
12 A.   For the time indicated --
13 Q.   For the temps.
14 A.   For the time indicated above.
15             MR. CONTI:  Do you want to take
16      a second?
17             MR. KEATING:  I'll just shut
18      this off.
19             (Pause).
20 Q.   Are you familiar with the process by which
21      temporary staffing agencies are supplied to
22      USCO?  Do you have any knowledge of how that
23      process works?
24 A.   Yes.

| | | |
|---|---|---|
| 1 | Q. | And what is the name of the temporary agency |
| 2 | | with which you currently do business? |
| 3 | A. | There's more than one. |
| 4 | Q. | Why don't you tell me which ones there are? |
| 5 | A. | Adecco, Agentry, A-G-E-N-T-R-Y. |
| 6 | Q. | Just those two? |
| 7 | A. | Today? |
| 8 | Q. | Currently. |
| 9 | A. | Currently, yes. |
| 10 | Q. | And who else have you used in the past? |
| 11 | A. | New Boston, others, but I can't remember the |
| 12 | | names. |
| 13 | Q. | Do you know whether USCO enters into any kind |
| 14 | | of contractual agreement with any of these |
| 15 | | temporary agencies to supply workers to USCO? |
| 16 | A. | Yes. |
| 17 | Q. | And have you ever seen any of those contracts? |
| 18 | A. | No. |
| 19 | Q. | And once you inform the temporary agency of the |
| 20 | | type of work, the date needed, and the amount |
| 21 | | of workers, what happens next? |
| 22 | A. | The temporary workers show up. |
| 23 | Q. | At USCO's facility in Forge Park? |
| 24 | A. | Yes. |

1     A.     A lead temporary worker.

2     Q.     Is that it?

3     A.     A supervisor.

4     Q.     When you say "supervisor," would that be an

5          employee of USCO?

6     A.     Yes.

7     Q.     Anyone else?

8     A.     Yes.

9     Q.     Who?

10     A.     Myself.

11     Q.     How about Mr. Glover?

12     A.     Yes, possibly.

13     Q.     And do you or Mr. Glover ever instruct the

14          temporary workers or advise them as to any USCO

15          work rules or policies?

16                  MR. KEATING: Object to the form

17          of the question. You can answer.

18     A.     Yes.

19     Q.     So you go over USCO's work rules; is that

20          correct?

21     A.     No.

22     Q.     Do you go over any USCO policies with them?

23     A.     Yes.

24     Q.     What kinds of policies do you review with the

```
 1          staffing employees?
 2   A.     Where the break room is, what break times they
 3          are allowed, no food on the floor, no drinks on
 4          the floor.
 5   Q.     Do you review any safety procedures with these
 6          individuals?
 7   A.     If required.
 8   Q.     What kind of safety procedures might be
 9          required?
10   A.     Lifting.
11   Q.     Anything else?
12   A.     No.
13   Q.     Now, you spoke about temporaries having
14          timecards.  Do you review the timecards of the
15          temporary workers at the end of the day?
16   A.     No.
17   Q.     Do you know who does that, if anyone, at USCO?
18   A.     Daily?
19   Q.     Or weekly.
20   A.     Yes, weekly.
21   Q.     Do you review them weekly?
22   A.     Sometimes.
23   Q.     Who else might?
24   A.     Office manager.
```

```
 1         question, and the answer stands, but I just
 2         want to note my objection to the form of the
 3         question.
 4    A.   Could you repeat the question?
 5    Q.   Sure.  Have you ever had the occasion to
 6         discipline a temporary worker?
 7    A.   Yes.
 8    Q.   And what were the circumstances behind your
 9         having to discipline that individual?
10    A.   Use of a cell phone.
11    Q.   And what discipline did you impose?
12    A.   I sent them home for the day.
13    Q.   How many individuals has this occurred with,
14         the use of a cell phone?
15    A.   One.
16    Q.   Any other occasions where you have had to
17         discipline a temp?
18                    (Pause).
19    A.   No.
20    Q.   Do you know of any occasions where Mr. Pina
21         disciplined a temp?
22    A.   No.
23    Q.   Do you know of any occasions where Mr. Glover
24         disciplined a temp?
```

```
 1   A.   No.
 2   Q.   Do the temps brings any tools or equipment with
 3        them to USCO?
 4   A.   No.
 5   Q.   Does Mr. Glover have the authority to
 6        discipline a temp?
 7   A.   Yes.
 8   Q.   How about Mr. Pina when he was employed at
 9        USCO?
10   A.   Yes.
11   Q.   And what shift do bargaining-unit members
12        typically work at USCO's warehouse facility?
13   A.   It varies.
14   Q.   What are the shifts?
15   A.   6 a.m. to 2:30 p.m., 8 a.m. to 4:30 p.m., 9
16        a.m. to 5:30 p.m.
17   Q.   And is there a shift that the temps typically
18        work at the USCO warehouse facility?
19   A.   Yes.
20   Q.   And what is that?
21   A.   10 a.m. to 4 p.m.
22                   MR. CONTI:  Off the record for a
23        second.
24                   (Exhibit 7, Agreement,
```

```
 1              marked for identification.)
 2              (Short break was taken.)
 3   Q.   Is there anyone else at USCO's warehouse
 4        facility, other than those individuals we've
 5        spoken about that, are supplied by the staffing
 6        agency whom you refer to as temps?
 7   A.   No.
 8   Q.   Showing you what's been marked Exhibit 7, can
 9        you identify that document?
10   A.   It's an agreement.
11   Q.   Between whom?
12   A.   USCO Distribution Services, Incorporated and
13        Teamsters Local 25.
14   Q.   And if you could turn to Article 33.
15   A.   Yes.
16   Q.   Is that your signature on that document?
17   A.   Yes.
18   Q.   And what role did you have, if any, in
19        negotiating this document?
20   A.   Witness.
21   Q.   What do you mean by "witness"?
22              MR. KEATING:  Objection.
23   A.   Witness to the proceedings.
24   Q.   Were you present at the negotiating sessions
```

```
 1           for this document?
 2    A.     Yes.
 3    Q.     If you could turn to Article 15, if you could
 4           just review Section B of that article for a
 5           second.
 6    A.     (Witness complies).
 7                      (Pause).
 8    Q.     Have you had time to review it?
 9    A.     No.
10    Q.     I just wanted you to look at Section B.
11    A.     I thought this was all Section B.
12    Q.     The first paragraph of Section B is sufficient.
13    A.     I'm sorry.
14    Q.     During those negotiations for this agreement,
15           do you recall any discussion as to the meaning
16           of the term "temporary employees" between the
17           parties?
18    A.     No.
19    Q.     Besides yourself and Mr. Peterson, was anyone
20           else involved in negotiating this contract on
21           behalf of USCO?
22    A.     Yes.
23    Q.     Who else?
24    A.     Regional vice-president.
```