## Agreement to Furnish Employees

This Agreement ("Agreement") is made and entered into this the 25th day of March, 2002 by and between Adecco North America, LLC with its headquarters located at 175 Broad Hollow Road, Melville New York 11747 (hereafter referred to as "Provider"), and USCO Distribution Services, Inc. d/b/a USCO Logistics, with a headquarters located at One Hamden Center, 2319 Whitney Avenue, Hamden, Connecticut 06518 (hereafter referred to as "USCO").

Whereas, USCO desires temporary staffing services at various locations throughout the United States and Canada ; and

Whereas, Provider is willing to provide comprehensive national management of temporary staffing services and temporary personnel with skills meeting the requirements specified by USCO ("Provider Employees") under the terms and conditions contained herein ("Services").

**NOW THEREFORE**, in consideration of the parties' mutual covenants, conditions and promises contained herein, and other good and valuable consideration, the parties agree as follows:

1.   Services

Provider hereby agrees to undertake, carry out and complete all Services established herein, and assign Provider Employees to perform all work in a businesslike and efficient manner, satisfactory to all standards required by USCO. Provider's services will at all times conform to this Agreement and the Detailed Scope of Services, attached hereto as Exhibit A.

   1.1   Recruitment & Qualifications. Provider shall furnish Provider Employees who, in Provider's best professional judgment, have the skills required for the specified job(s) and cause such employees to be present and ready for work at the date, time and location specified in the work order. Qualifications for a particular employee or position shall be governed by USCO's standard job descriptions as communicated by USCO from time to time. USCO's local distribution center managers (DCMs) may require additional qualifications at the time an order is placed. In any event, Provider shall not place any Provider Employee who does not satisfy the minimum standards described in this Agreement and the standard corporate job descriptions.

   1.2   Screening. Provider shall, at its own expense, screen, test reference check, complete I-9 verification of Provider Employees prior to referral by Provider to designated work site. Reference checks of all Provider Employees shall include, but not limited to, verification of qualifications, skills testing and confirmation of previous work history. Specific screening requirements are described in Exhibit A. Provider further agrees to to provide the above described screening to all Referred Employees. (As used herein, "Referred Employee" shall mean each prospective employee of USCO who is referred to Provider for employment and accepted by Provider and shall be invoiced at a discount listed on Exhibits B-1 and B-2. For all other purposes Referred Employee shall be considered a Provider Employee.)

      USCO shall have the right, but not the obligation to conduct periodic audits of Provider's screening records to confirm compliance with these provisions. If the audit reveals that screening requirements were not met Provider shall implement an escalation process and audit all screening records for all Provider Employees assigned at the particular USCO location.

1.3     Scheduling. Provider shall schedule Provider Employees to work in coordination with the business needs of USCO, which shall be communicated to Provider by USCO. Provider shall have the responsibility for communicating such requirements to each Provider Employee assigned to USCO

1.4     Instructions / Policies. Provider shall direct Provider Employees to perform their duties under the supervision and control of USCO's designated supervisors, in accordance with USCO's directions and instructions. Provider shall further direct Provider Employees to comply with the rules, regulations, policies and procedures of USCO, including but not limited to fire protection, safety and security

1.5     Removal. Provider shall immediately remove any Provider Employee from assignment to USCO for any reason at USCO's request. USCO agrees that it will not make such requests for reason(s) that violate applicable laws.

1.6     Employment Decisions. Provider shall be exclusively responsible for all decisions concerning matters of hiring, firing, discipline, payroll practices, employee benefits and communication with Provider Employees with respect to their duties as Provider's Employees under this Agreement, although USCO may terminate or change any assignment for any reason. Due to the vicissitudes of temporary employment, certain Provider Employees may fail to provide satisfactory services to USCO, or unsatisfactory in other ways. In such event, Provider shall, at USCO's request, promptly replace the unsatisfacotry Provider Employee with another. In the event that any Provider Employee is rejected by USCO within eight (8) hours of beginning work, USCO will not be required to pay for such Provider Employee for such shift.

1.7     Absences. Whenever a Provider Employee at a designated work assignment of USCO is required to be absent for any reason, or is unable to continue to perform in the assignment for any reason, Provider shall provide immediate notice to USCO of such, and, except when otherwise instructed by USCO, Provider shall assign a replacement Provider Employee to complete the work order assignment.

1.8     Wages and Benefits. Provider shall be solely responsible for all wages, benefits and all other compensation, if any, due Provider Employees placed on temporary job assignments under this Agreement. Provider shall pay net wages directly to the Provider Employees in a timely fashion as required by law and in accordance with Provider's policies for same as may be developed and communicated to USCO from time to time. Provider shall indemnify save and hold free and harmless USCO from and against any and all costs, damages, including but not limited to any and all expenses, fines, and assessments, as a result of the failure to pay compensation due Provider Employees for services rendered under this Agreement. Provider shall maintain all reasonably necessary personnel and payroll records for Provider Employees assigned to USCO's account.

1.9     Confidentiality Agreements. Provider shall require each Provider Employee assigned to USCO to agree to hold in trust for USCO and not to disclose to any other party, all confidential information of USCO. Provider shall require each Provider Employee assigned to USCO to execute any reasonable USCO generated documents related to performance of services for USCO, including, but not limited to, a confidentiality agreement. USCO's initial form of Confidentiality Agreement is attached as Exhibit D. Provider shall not place any Provider Employee at USCO if Provider Employee fails or refuses to sign the Employee Confidentiality

Agreement or other required documentation.

1.10   Reports. Provider will furnish USCO with all relevant and necessary mutually agreed upon reports for the evaluation of Provider's services, including without limitation:

   (a)   The Management Information Report or invoices shall be in a format as designated by USCO, and shall include, at a minimum, week-ending date, department/division information, name of Provider Employee, skill classification, name of person at USCO to whom Provider Employee reports, bill rate, pay rate and hours worked separated between regular and overtime hours.

   (b)   Each Provider Employee, will in accordance with USCO's procedures, present a time record to USCO setting forth the hours worked. An authorized representative of USCO must countersign the record and will thereby certify that such time is correct.

   (c)   Provider shall send to USCO with each Management Information Report agreed upon documentation to verify hours worked by Provider Employee(s) the prior workweek.

   (d)   Subcontractor billing by location

1.11   USCO Responsibilities.

   (a)   USCO will supervise, direct and control the day-to-day work and/or tasks performed and to be performed by Provider Employees while assigned to USCO;

   (b)   Subject to Paragraph 1.11(a) above, communicate to Provider any issues regarding the performance of any Provider Employee for Provider to discuss directly with the Provider Employee.

   (c)   USCO will furnish a work place which does not violate applicable local, state and federal safety, health and environmental laws and regulations, including OSHA and the ADA, with appropriate safety and hazardous materials training, and all tools and other materials, including protective devices, safety glasses, gloves, instruments and/or other materials required for Provider Employees to perform their duties to the same extent provided to regular USCO employees; and

   (d)   USCO will furnish to Provider any reasonable documents which USCO requests that Provider Employees sign, including but not limited to confidentiality agreements, and Provider shall require that Provider Employees sign such documents for the benefit of USCO.

   (e)   USCO acknowledges that the Provider Employee is assigned on the basis of a particular job description and that USCO will not to materially change such Provider Employee's job responsibilities and description without Provider's prior written approval, which shall not be unreasonably withheld or delayed. For purposes of this Section, a "material change" in "such Provider Employee's job responsibilities and description" shall occur when USCO assigns a Provider Employee a job responsibility and description

outside such Provider Employee's stated scope of employment and which the Provider Employee is not reasonably qualified to perform.

(f) USCO will not allow Provider Employees to operate USCO-owned or leased automobiles or trucks, forklifts, pallet jack or other motorized vehicle without Provider's prior written consent, unless such operation is within the scope of such employee's employment. Notwithstanding the forgoing, Provider Employees may operate, without Provider's consent, any work-related vehicles and equipment used in or about each warehouse premises designed for product and material handling, such as fork lifts, pallet jacks, etc. (collectively, the "Work-related Equipment") provided such Provider Employees are trained in accordance with OSHA requirements. Provider will not be obligated to indemnify USCO under Section 5.1 of this Agreement nor be liable for damage to personal or real property caused (or contributed to) by Provider Employees operating Work-related Equipment: (i) if Provider demonstrates that it complied with its obligations regarding recruitment, screening and training of such Provider Employee as provided for in this Agreement and the Scope of Services, or (ii) to the extent such damage is caused by USCO's failure to maintain the Work-related Equipment or train Provider Employee in accordance with the obligations allocated to USCO under this Agreement. Nothing contained in this Section shall reduce or affect Provider's obligations under this Agreement with respect to Provider Employees, including without limitation, the obligation to provide workers' compensation and the other insurance.

(g) No Provider Employee is authorized or empowered to render a professional opinion on any financial statement on behalf of Provider or USCO, and may not sign his or her name or the Provider name to any financial statement or any tax return, while on an assignment to USCO.

(h) Provider acknowledges that Provider Employees will have access to keys, merchandise and other valuable property within USCO's distribution centers and Provider undertakes to assign only those Provider Employees who are qualified to work with such items. Provider Employees will generally not have access to cash or checks or negotiable securities. If USCO gives Provider Employees access to cash, checks or negotiable securities without prior Adecco approval, USCO agrees that Provider shall not be responsible for routine shortages associated with such access. Further, Provider will not be obligated to indemnify USCO under Section 5.1 of this Agreement nor be liable for loss of cash, negotiable instruments or merchandise caused (or contributed to) by Provider Employees with access to or handle cash, checks, keys or credit card information or merchandise while working at USCO, if Provider demonstrates that it complied with its obligations regarding recruitment, screening and training of such Provider Employee as provided for in this Agreement and the Scope of Services.

(i) USCO shall upon its review, approve time records submitted by Provider Employees and shall retain copies of such time records for a period of 3 years.

2. COMPENSATION

2.1 Rates. USCO agrees to pay Provider in accordance with the Pricing Schedule attached hereto as Exhibits B-1 and B-2. Provider will be paid in accordance with information obtained

from time cards and other records kept in accordance with this Agreement. Payments will be made at such time or time as is specified in this Section. The Pricing Schedule may be amended at any time by mutual agreement of the parties.

2.2     Invoicing. Invoices shall be sent by Provider to USCO's individual locations weekly within five (5) business days of the close of the prior work week. All proper invoices are due and payable to Provider within thirty (30) days of receipt of invoice, and not until then. USCO will be billed for the hours shown on the time record. USCO shall endeavor to notify Provider in writing no later than the date payment is due if any disputed or questioned items appear in an invoice. The parties will then enter in good faith discussions to resolve any disputed charge. In the event it is determined that USCO is entitled to a credit, Provider shall credit USCO in the next invoice for the appropriate amount. . In the event USCO does not dispute invoiced amounts within six months of receipt of invoice, payment shall constitute acceptance of the invoiced hours.

2.3     Late Invoices. Provider acknowledges that timely and accurate invoices are critical to USCO's operations and Provider agrees to use its best efforts to submit timely and accurate invoices. Timely invoicing is dependent on Provider's timely receipt of hours worked by Provider's Employees and Subcontractors. Provider will manage Provider Employees and Subcontractors to ensure timely reciept of hours worked. Therefore, in order to comply with this Section 2.3, Provider has implemented and will comply with the following procedures:

(i)     At least every two weeks Provider shall review its internal reports at at each Provider location which is rendering services to USCO to determine which Provider Employee or Subcontractor has failed to submit hours worked.

(ii)    Provider shall contact each Provider Employee and Subcontractor that has failed to submit time and shall require such Provider Employee/Subcontractor to submit time within one week of contact.

(iii)   In the event Provider Employee and/or Subcontractor fails to submit time after such contact, Provider shall contact DCM at the applicable location. DCM will provide to Provider the hours worked by Providers Employees and/or Subcontractor's employees in order for Provider to create an invoice.

(iv)    Provider shall also be entitled to provide USCO estimates of invoices for Services rendered in order to permit USCO to take appropriate accruals on its financials. Provider's submission of estimates shall be construed as Provider having timely submitted invoices.

(v)     When time that has been billed as estimated time is actually received, Provider will issue an appropriate credit or invoice which clearly links such credit to the prior estimated invoice. A status / reconciliation report will be availiable upon USCO's request to identify estimated billed amounts and the status of actual billing against such estimates. This information will be reviewed as part of the semi-annual business review.

In the event Provider fails to invoice USCO at a particular location for certain hours within six months from the payroll period ending date, USCO will be entitled to a credit for such hours. Nothwithstanding the forgoing the parties agree that the credit described in the preceding sentence shall not apply in the event: (i) that Provider can demonstrate that the bill was delivered to USCO in a timely manner (ii) due to extraordinary circumstances outside of Provider's control or (iii) agreed to by USCO in advance.

2.4   Audit. USCO shall have the right, upon reasonable prior written notice, to audit the prior year's books and records of Provider to determine compliance with the terms and conditions of this Agreement. If it is determined that Provider misstated any amounts owing to it by more than 10%, Provider agrees to contribute $2,500 towards USCO's actual expenses incurred in perfoming the audit.

3.   TERM.

The initial term of this Agreement will be for a period of two (2) year(s) beginning April 1, 2002 through March 31, 2004 (the "Initial Term"), unless sooner terminated in accordance with the provisions hereof. This Agreement may be renewed and extended for such periods as may be mutually agreed to by Provider and USCO in a written Addendum to this Agreement signed by Provider and USCO. If this Agreement is not so renewed and extended prior to the expiration of the Initial Term, this Agreement and the relationship between Provider and USCO hereunder shall terminate upon the expiration of the Initial Term; provided, however, that the parties shall cooperate in good faith to wind down the services being rendered by Provider to USCO at time of termination. Any such termination shall not affect any obligation of USCO to pay for services already rendered or any amounts unpaid to Provider at the time of termination. Provider

4.   COMPLIANCE.

4.1   Independent Contractor. Provider agrees that its status is solely that of an independent contractor and not an employee or agent of USCO. The parties agree that all Provider Employees who perform services pursuant to this Agreement are employees of Provider and not to be considered employees of USCO except as required by law. USCO shall not engage in actions that would make Provider Employees common law employees of USCO. In furtherance of such understanding, and notwithstanding any other provision of this Agreement to the contrary, the parties agree that Provider shall be responsible for payment of all remuneration payable to said Provider Employees and all taxes imposed on an employer with respect to such Provider Employees, including those imposed under federal and state withholding laws and Provider shall also be responsible for payment of taxes under the Federal Insurance Contributions Act ("FICA") with respect to said Provider Employees.

4.2   Compliance with Laws. Provider shall comply with all applicable federal, state and local laws, rules and regulations, and shall obtain all applicable licenses and permits for the conduct of its business and the performance of the services called for in this Agreement. Provider's obligations will include, by way of illustration and not limitation, compliance with the Equal Employment Opportunity Act, Fair Labor Standards Act, Occupational Safety and Health Act, Americans with Disabilities Act, Title VII of the Civil Rights Act, Age Discrimination in Employment Act, Immigration Reform and Control Act, Family and Medical Leave Act, work rules incorporated in any collective bargaining agreements governing USCO facilities and any and all other applicable federal, state and local laws, statutes, ordinances, rules, regulations,

codes, orders and/or programs and any other laws which subsequently become applicable under this Agreement. Provider will maintain such Federal, state or local permits and licenses that may be required for the performance of its obligations hereunder. USCO agrees to comply with all applicable laws, rules, and regulations of duly constituted governmental bodies in the performance of this Agreement. The terms and conditions of the Agreement and its attachment shall be applicable to Canada to the extent permitted by Canadian federal, provincial and local law. Each party agrees to comply and cooperate in the compliance with all applicable Canadian laws, rules, and regulations of duly constituted governmental bodies.

4.3   Les parties aux presentes confirment leur volonte que le present contrat de meme que tous autres documents et communications s'y rapportant soient rediges en anglais seulement. The parties to these presents confirm their wish that the present contract and all other documents and communications pertaining hereto be drawn up in English only.

5.   INDEMNIFICATION.

5.1   Indemnity by Provider. Provider hereby indemnifies, defends and holds USCO harmless from its proportionate share of all claims, losses, claims, suits and/or expenses ("Claims"), that may be made against USCO on account of damage to any property, bodily injuries to or death of any person or loss of any kind, to the extent caused by or resulting directly or indirectly from (i) the negligence, or wrongful acts or omissions of Provider or its employees, in connection with the supplying of Provider Employees under this Agreement, or (ii) arising out of Provider's failure to comply with its obligations under this Agreement, or (iii) arising out of Workers' Compensation Claims, Unemployment Compensation Claims or Disability Claims of Provider Employees or (iii) Claims under such other laws or obligations dealing with Provider's failure to comply with the laws regulating the employer and employee relations or the workplace including Provider's breach of its obligations under this Agreement, except to the extent caused by or resulting from the negligence or willful misconduct of USCO or its employees.

5.2   Indemnity by USCO. USCO shall indemnify and hold Provider harmless from its proportionate share of all claims, losses and expenses, that may be made against Provider on account of damage to any property, injuries to or death of any person or loss of any kind, to the extent caused by or resulting from the negligence or wrongful acts of USCO or its employees including USCO's breach of its obligations under this Agreement.

5.3   Incidental Damages. Notwithstanding any contrary provision in this agreement, in no event shall USCO or Provider be liable to the other for any special, incidental, indirect, punitve, exemplary or consequential damage (including lost profits) arising out of this Agreement, whether in an action for or arising out of breach of contract, tort, or any other cause of action.

5.5.   Survival. Sections 5.1, 5.2, 5.3 and 6.1 and 6.2 shall survive the termination or expiration of this Agreement.

6.   OWNERSHIP OF WORK/PROPRIETARY RIGHTS/CONFIDENTIALITY

6.1   Proprietary Rights. At no time during the performance of services under this Agreement shall Provider or its employees including Provider Employees have any right of ownership, proprietary right or otherwise to any materials of any kind used or created, including but not limited to, reports, designs, drawings, plans, specifications, or schedules prepared or used in any

manner by Provider Employees in the performance of the temporary work assignments at USCO and all such materials shall at all times remain the sole and exclusive property of USCO.

6.2   Developments. USCO shall have all proprietary rights, including but not limited to, exclusive copyright, patent rights and other intellectual property rights, all inventions, ideas, computer programs and related documentation, software, designs, adaptations or improvements, tools or processes, or other works of authorship (all hereinafter called "Developments") conceived, developed, first, implemented, or produced by Provider Employees in the performance of temporary work assignments under this Agreement as "work made for hire". Provider and its employees shall retain no ownership, interest or title in such Developments. Provider agrees and shall require its employees to agree to assign and Provider hereby assigns, all rights, title and interest in and to such Developments and in any patents or patent applications based thereon, and Provider agrees to assign and hereby assign the copyright of all such Developments and material produced pursuant to or in the performance of this Agreement. If requested by USCO, Provider shall cause each Provider Employee assigned hereunder to sign a Developments agreement in a form to be agreed upon between USCO and Provider.

6.3   Delivery. In the event any such property defined in paragraph 6.1 or 6.2 comes into the possession of Provider or its employees at any time, Provider agrees to, and shall instruct its employees to, deliver said property promptly to USCO.

6.4   Return of Property. Upon the conclusion of each and every temporary assignment, Provider agrees any and all property in its possession belonging to USCO shall be immediately returned to USCO upon the departure of Provider's employees from USCO premises. Provider shall require the same of Provider Employees.

6.5   Disclosure.   Provider shall not disclose in any manner to any entity any information relating to this Agreement or contained in this Agreement without the express, advance written consent of USCO. Provider shall require the same of Provider Employees.

7.   SUBCONTRACTING
Provider may utilize qualified subcontractors to perform the services under this Agreement so long as Provider directly manages such subcontractors and remains fully liable for any acts or omissions of such subcontractors unless the use of a particular subcontractor is required by USCO. The acts or omissions of subcontractors shall not be considered a Force Maejure event and shall not relieve, limit or excuse Provider's obligations under this Agreement.   Provider shall notify the affected USCO Distribution Center Manager in advance that it intends to use any subcontractor.   USCO has the right, but not the obligation, to review or investigate any subcontractor (including subcontractor's employees) and shall have the right to reject any of the same at any time prior to commencement of or during the performance of the Services.

8.   INSURANCE
Provider represents, warrants and agrees to maintain insurance in the form and amounts described below at all times while a Provider Employee is placed at an USCO facility. It is specifically agreed that Provider's workers' compensation and general liability coverage shall apply for the benefit of USCO. Provider shall maintain the following minimum coverages during the term of this Agreement:

8.1.   Workers' Compensation And Employers' Liability. Workers' Compensation insurance in compliance with any applicable federal or state labor code, act, law or statute where Provider

operates, and Employers' Liability insurance of not less than $1,000,000 per accident for each employee, $1,000,000 disease per employee and $1,000,000 disease policy limit.

8.2   Commercial/Comprehensive General And Automobile Liability.

(a)   Commercial/Comprehensive General Liability insurance of not less than $3,000,000 combined single limit or equivalent for bodily injury, personal injury and property damage as a result of one occurrence including coverage for Premises-Operations, Products/Completed Operations, Contractual Liability and Broad Form Property Damage including Completed Operations. Personal injury shall include, but not be limited to, copyright infringement, misappropriation of ideas or rights, libel or slander.

(b)   Commercial/Comprehensive Automobile Liability insurance of not less than $1,000,000 combined single limit of equivalent for bodily injury and property damage as a result of any one occurrence including coverage for Owned, Hired and Non Owned Automobiles.

8.3   Fidelity/Employee Dishonesty. Provider shall maintain a fidelity bond insuring against the dishonest act(s) committed by Provider Employees assigned to USCO under this Agreement. Provider shall maintain such fidelity bond in the amount of not less than $5,000,000 and such fidelity bond shall remain in full force and effect during the term of this Agreement.

8.4   Umbrella Liability. A combination of primary and excess/umbrella liability policies will be acceptable as a means to meet the limits specifically required hereunder. **THE REQUIRED MINIMUM LIMITS OF COVERAGE SHOWN ABOVE, HOWEVER, WILL NOT IN ANY WAY RESTRICT OR DIMINISH PROVIDER'S LIABILITY UNDER THIS AGREEMENT.**

8.5   Additional Insurance Requirements

(a)   Provider's policies of insurance in Section 8 shall be endorsed to include provisions stating that Provider's insurance policies are primary, are not subordinate to any policies of subcontractors, franchisees, or licensees and non-contributory to any insurance or self insurance maintained by USCO.

(b)   Provider's insurance policies under Section 8.2 shall, by endorsement, name USCO as an "Alternate Employer" and "Additional Insured" with respect to Provider's Services.

(c)   Provider's insurance policy under Section 8.1 shall contain by endorsement Waiver of Subrogation in favor of USCO and shall name USCO as Alternate Employer.

(d)   Provider shall furnish certificates of insurance satisfactory to USCO including required endorsements prior to commencement of performance under this Agreement to:

   USCO Distribution Services, Inc.
   Attention: Legal Department
   One Hamden Center

2319 Whitney Avenue
Hamden, CT 06518

9  PROHIBITED INTERESTS/CONFLICTS OF INTEREST/BUSINESS ETHICS

9.1  Provider shall exercise reasonable care and diligence to prevent any actions or conditions that could result in a conflict of interest with USCO.

9.2  Provider represents and warrants that it presently has no known interest, direct or indirect, which would conflict in any manner or degree with the performance of services under this Agreement. Provider further represents and warrants that in the performance of services under this Agreement, no person, having any such interest, is or shall be knowingly assigned by Provider to USCO.

9.3  During the term of this Agreement, Provider agrees not to engage in any activity which materially affects Provider's ability to provide the Services to be performed under this Agreement.

9.4  Provider or its employees shall not offer any gifts, entertainment, payments, loans or any other consideration to employees of USCO, their families, vendors, or any other third parties for the purpose of influencing such persons to act contrary to the interests of USCO.

9.5  It is understood and agreed that USCO retains the right to hire its own employees directly and without payment or obligation to Provider.

10.  TERMINATION FOR CONVENIENCE

Provider or USCO may terminate this Agreement for any reason or no reason whatsoever, at any time by ninety (90) days advance written notice to the other party. Provider will be paid its costs and fees for work performed up to the date of termination. Provider will provide reasonable transition assistance to USCO for ninety (90) days following the effective date of termination.

11.  MISCELLANEOUS

11.1  Integration. This Agreement together with all attachments and exhibits, represents the entire Agreement of the parties with respect to the subject matter hereof, and all prior agreements are revoked and superseded by this Agreement, and no representations, warranties, inducements or oral agreements have been made by any of the parties except as expressly set forth herein. Should there be any conflict between this Agreement and the other supporting documentation, the terms of this Agreement shall prevail.

11.2  Modifications. This Agreement may not be changed, modified or rescinded except in writing, signed by all parties hereto, and any attempt at oral modification of this Agreement shall be void and of no effect.

11.3  Assignment. Provider was selected by USCO based upon its particular skills and abilities. Provider may not assign or delegate any of its rights or obligations hereunder, except as specified herein without first obtaining the written consent of USCO. Notwithstanding the

foregoing, either party may without the consent of the other party assign all of its obligations and duties hereunder, to an Affiliate (provided the party guaranty the Affiliate's performance) or to any successor to all or substantially all of its interest in the business to which this Agreement relates. As used herein, "Affiliate" of a party shall mean any corporation or other business entity controlled by, controlling or under common control with, such party.

11.4    Severability. If any provision of this Agreement is declared void or unenforceable, such provisions shall be deemed severed from this Agreement, which shall otherwise remain in full force and effect.

11.5    Binding Effect. All of the terms, provisions and conditions of this Agreement shall be binding upon and inure to the parties hereto and their respective successors, assigns, and legal representatives.

11.6    Notices. Any notices which may be required under this Agreement shall be in writing, shall be effective when received and shall be given by personal service, or by certified or registered mail, return receipt requested, to the address set forth on the first page of this Agreement, or to such other addresses which may be specified in writing to all parties. A copy of any notice sent to USCO shall be sent via facsimile to the USCO's Legal Department (Fax no. (203) 597-6890). A copy of any notice sent to Provider shall be sent via facsimile and to the Provider's Legal Department (Fax no. (631) 844-7266).

11.7    Records. Provider shall permit the authorized representatives of USCO to inspect and audit any and all records relating to this Agreement pursuant to the terms of section 2.4. Provider shall maintain all records relating to this Agreement for a period of three (3) years following the expiration or termination of this Agreement, whichever occurs first. In the event USCO elects to perform an audit or inspection of records, The parties hereby agree any such audit or inspection shall take place at the office(s) to be agreed upon by the parties.

11.8    Applicable Law. This Agreement, its interpretation and all work performed thereunder shall be governed by the laws of the State in which Services are rendered. For the purposes of this Agreement all Services other than the provision of employees at a particular USCO locations, shall be considered delivered in the State of Connecticut.

11.9    Affirmative Action. Provider and USCO shall not discriminate against or harass any employee or applicant for employment based upon sex, race, national origin, religion, color, pregnancy, ancestry, age, marital status, medical condition, or physical disability in connection with employment, demotion, transfer, recruitment, advertising, lay-off, termination, rates of pay or other forms of compensation, or selection for training.

11.10    Paragraph Headings. Headings as to the contents of particular paragraphs are provided for convenience only and are in no way to be construed as part of this Agreement or as a limitation of the scope of the particular paragraph to which they refer.

12.    RELATED ENTITIES

For purposes of this Agreement, the term "USCO" shall include all affiliates of USCO Distribution Services, Inc. and its related entities in the United States or Canada, including but not limited to Kuehne & Nagel Investment, Inc., KN Lead Logistics, LLC, KN USA, USCO, Inc., USCO Logistics (Canada), Inc., and other entities which may be formed or become affiliated with USCO (called "Related Entities"). Related Entities operating in the United States and Canada shall be entitled to the benefits of this Agreement (including without limitation pricing) and USCO shall be entitled to the benefit of terms or rates (including pricing) extended by Provider (or its affiliates) to such entities if such terms or rates are better than those provided for herein.

13.   EXHIBITS AND ADDENDA. The following Exhibits and Addenda are incorporated herein and made a part hereof by reference:

    Exhibit A:     Detailed Scope of Services
    Exhibit B-1:   Invoice Pricing Structure – United States
    Exhibit B-2:   Invoicing Pricing Structure – Canada
    Exhibit C:     Corporate Accounting
    Exhibit D:     Employee Confidentiality Agreement

IN WITNESS WHEREOF, the parties have executed this Agreement on this the 26th day of March 2002. MCM

Adecco North America, LLC                USCO DISTRIBUTION SERVICES, INC.
"Provider"                               "USCO"

By: _Mary Morrisey_                      By: _John Frick_
Printed Name: Mary Morrisey              Printed Name: John Frick
Title: SVP, National Sales               Title: Executive VP
Date: 3/26/02                            Date: 4/5/02